**TRUSTEES OF INDEPENDENT SCHOOL DIST. NO. 57 et al. v. ELBON et al.**
**(No. 9290.)**

(Court of Civil Appeals of Texas. Ft. Worth. April 17, 1920.)

1. **Mandamus** ⟨key⟩71—Lies only to compel ministerial act.

Writ of mandamus will not lie except where the acts sought to be performed are purely ministerial.

2. **Elections** ⟨key⟩1—No inherent right of the people to vote or hold an election.

There is no inherent right for the people to vote or to hold an election, such subjects being governed by constitutional and legislative provisions, which regulations, designed to secure the freedom of the voters, the security and purity of the ballot, and the certainty of the result, should not be entirely ignored.

3. **Mandamus** ⟨key⟩74(5) — Record held not to justify writ to compel school trustees to declare result of election.

In view of the record, showing noncompliance with the requirements of Vernon's Sayles' Ann. Civ. St. 1914, arts. 2886, 2889, 3024, relative to election of trustees for an independent school district, petitioners for mandamus *held* not entitled to the writ to compel trustees of the district to declare the results of an election for school trustees, and to issue certificates therefor to the parties receiving majority of votes.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Petition for mandamus by H. B. Elbon and others against the Trustees of Independent School District No. 57 and others. From judgment for petitioners, defendants appeal. Reversed, and cause remanded.

Marvin H. Brown and Charles T. Rowland, both of Ft. Worth, for appellants.

Essex & Cogdell, of Ft. Worth, for appellees.

CONNER, C. J. This is an appeal from a judgment in a mandamus proceeding against appellants commanding them to declare the results of an election for school trustees and to issue certificates therefor to the parties receiving the majority of votes.

The proceeding was instituted on the 17th day of May, 1919, by appellees, H. B. Elbon, J. Sam Brown, Mrs. Kate Staude, joined by her husband, E. V. Staude, and Mrs. C. C. Bigley, joined by her husband, C. C. Bigley, against appellants, Paul Shropshire, J. W. Crowder, E. T. Jenkins, W. W. Miller, T. P. Freeman, J. P. Joyce, and J. Frank McQuary.

The applicants for the writ, H. B. Elbon and others, alleged that Paul Shropshire and others complained of with him were the trustees of the independent school district No. 57 in Tarrant county, and that as such they had ordered an election "for the purpose of electing school trustees for the ensuing term" on the first Saturday in April, 1919; that notices of said election were duly posted at the proper places, for the proper length of time, and in the manner required by law; and that as the law directs three persons were appointed to hold said election, to wit, J. R. Epps, Miss Bertha Horne, and Miss Lucy Horne; that the last-named parties did at the time and place designated in the order hold said election; that the parties holding said election made returns of the same to the board of trustees, but that said board had failed and refused to canvas said returns and to declare the results of said election; that the petitioners, H. B. Elbon, J. Sam Brown, Mrs. Kate Staude, and Mrs. C. C. Bigley "have been informed and have reasons to believe and do allege that they were duly elected by said election for school trustees for said district, which fact the returns, if properly canvassed, will show." The petitioners accordingly prayed that the writ of mandamus might issue commanding the board of trustees to canvass the returns and declare the results as stated; or, in the alternative, in the event said election for any reason should be held to be illegal, then that the court order an election for the purpose, of electing trustees for the coming year.

In the view that we have taken, of the case, we need not notice the answer of the trustees, inasmuch as we have concluded that appellees in neither allegation nor proof have shown a right to the issuance of the writ.

[1] It is a familiar doctrine that a writ of mandamus will not lie except where the act shown to be performed is purely ministerial. In Callaghan v. McGown, 90 S. W. 319, the court quoted with approval from Merrill on Mandamus, § 43, as follows:

"The writ (mandamus) will not lie unless the act desired is of absolute obligation on the part of the person sought to be coerced. The relator must show, not only a clear legal right to have the thing done, but also by the person sought to be coerced, in the manner sought; and that he still has it in his power to perform the duty required. The action sought must not only be in the respondent's power to do, but it must be his duty to do it," etc.

Numerous other authorities to the same effect might be cited, and we have quoted the rule to the end that it might be in mind during the consideration of the proceedings developed by the record in this case.

Article 2886, V. S. Tex. Civ. Stats., provides for the election of seven trustees in each independent school district. Article 2889 provides that the terms of office of the seven trustees chosen at the first election shall be divided into two classes, and the members shall draw for the different classes; that the

four members drawing the numbers one, two, three, and four shall serve for one year, or part thereof, that is, until the first election; and the three members drawing the numbers five, six, and seven shall serve for two years, that is, until the second regular election thereafter; it being also provided that the trustees first elected shall hold their offices until their successors are elected.

The appellees' petition in this case alleges that on the first Saturday in April, 1919, the date upon which the election in question was called to be held, the appellants herein were "the legal and acting board of trustees for said school district," and, while the petition alleges the issuance of an order for an election for school trustees, it fails to exhibit the order so that it may be determined how many trustees were to be elected, that is, whether the legal tenure of office of the class of four or the class of three of such trustees expired at the date upon which the election was called; nor, when we go to the evidence submitted upon the hearing, are we enabled to find such information. If the term of office of four of such trustees expired at the date of such election, then the election should have been for four persons to succeed them; but, if it was the alternating class of three, then but three could have been elected, under the terms of the law. We cannot tell from the petition nor from the evidence with any degree of certainty which of the classes it became necessary to supply at the election. The only possible indication of whether it was three or four trustees to be elected is the fact that the four appellees alleged that they had been informed, etc., as above noted, that they were elected.

What was offered in evidence on the hearing as the official ballot at the election in question shows that there were ten candidates; that these candidates were for places one to seven, inclusive, thus indicating that election was for seven trustees instead of four or three as the case should have been. That which on the hearing was exhibited as the tally sheet shows there were candidates for each of the seven places, and that each of these candidates received votes. For instance, as indicated by this sheet, W. C. Connor, for "Place 1," received 25 votes; E. T. Jenkins, for "Place 2," received 24 votes; J. W. Crowder, for "Place 3," received 26 votes; J. P. Joyce, for "Place 4," received 12 votes; Mrs. C. C. Bigby also received 12 votes for "Place 4"; Mrs. Staude received 26 votes for "Place 5"; Paul Shropshire received 4 votes for "Place 6," and J. Sam Brown received 20 votes for "Place 6"; W. W. Miller received 4 votes for "Place 7," and H. B. Elbon received 21 votes for "Place 7." If we presume that this tally sheet accurately portrayed the action of the voters, then the alternating requirement of the article of the statute, above cited, was not observed and could not be given effect by the ballot taken. We find ap-

pellees Brown and Mrs. E. V. Staude to be in one class, and appellees Elbon and Mrs. C. C. Bigley, as alleged in the petition but Bigby as shown on the tally sheet, belong in the other class.

While on the subject of the returns, we will observe that the witness Epps testified that they had been delivered to the president of the board, Paul Shropshire, after the election referred to. He said: "These are the complete returns made to the chairman with the ballots."

The ballots were not signed by the presiding officer of the election as required by the statute. There was no certificate of any kind or character or signature to the instrument offered as a tally sheet, and to which we have already referred. Article 3024 of the statutes specifically requires that when the ballots have all been counted the managers of the election in person shall make out triplicate returns of the same, "certified to be correct, and signed by them officially," etc.

The essential element in an election is the ascertainment of the will of the electors with reference to the subject or candidate submitted for their consideration. Hence it is that many departures from the prescribed forms relating to the ballots, notices, and other proceedings have been held to be directory and not sufficient to invalidate an election of which the electors, whose will was sought, had notice or knowledge, and when it was made to appear that the election was fairly held without artifice or fraud, and where the result manifested the free choice of the voters.

[2] But in our form of government there is no inherent right in the people to vote or to hold an election. These are subjects governed by constitutional and legislative provisions, and such regulations designed as they are to secure the freedom of the voters, the secrecy and purity of his ballot, and the certainty of the result ought not to be entirely ignored. As stated by the Kentucky Court of Appeals in the case of Harrison v. Stroud, 129 Ky. 193, 198, 110 S. W. 828, loc. cit. 830 (16 Ann. Cas. 1050):

"While it is the general rule, and a good one, that irregularities, the result of which upon the election can be shown with reasonable certainty to have been not prejudicial, may be disregarded, and the result of legal votes cast in the manner authorized by law be allowed to stand, yet when such irregularities are so widespread or general as to leave the judicial mind in doubt as to how the election did go, or would have gone but for them, then they cannot be eliminated."

[3] We approve what was thus said by the Kentucky court and conclude that the record before us does not present a case in which we feel willing to approve the award of the mandatory writ appellees sought. The whole record presents so much of uncertainty that we think the judgment below must be re-

versed and the cause remanded. We are the more inclined to this conclusion in view of the fact, as we must know if the mandate of the statutes (article 2889, Vernon's Stat. 1919 Supp.) has been obeyed, that since the election involved in this proceeding another election was held on Saturday, the 3d day of April of this year, and we cannot know who now compose the legally constituted board of trustees to whom the writ shall be directed.

It is accordingly ordered that the judgment be reversed, and the cause remanded.