CASE 21.—ELECTION   CONTEST   BY   WILLIAM   STROUD
        AGAINST HARRY HARRISON.—May 29.

# Harrison  v.  Stroud

Appeal from Grant Circuit Court.

J. W. CAMMACK, Circuit Judge.

From the judgment contestee appeals.—Reversed.

1.  Elections — Irregularities — Effect—Contests—Statutory Provi-
    sions.—While, as a general rule, irregularities, the result of
    which on an election can be shown with reasonable certainty
    to have been not prejudicial, may be disregarded, and the
    result of legal votes cast in the manner authorized by law be
    allowed to stand, yet under the express provisions of Ky.
    St. 1903, section 1596a, subsec. 12, where it appears from the
    whole record that there has been such fraud, intimidation,
    bribery, or violence in the conduct of the election that neither
    contestant nor contestee can be adjudged to have been fairly
    elected, the circuit court, subject to revision by appeal, or
    the Court of Appeals finally, may adjudge that there has been
    no election.
2.  Same.—An election was void where the officers of election per-
    mitted about 20 per cent. of the voters to vote openly, instead
    of by secret ballot, as required by the Constitution and the
    statutes.
3.  Injunction—Public Officers—Exercise of Office—Election Con-
    tests.—In an election contest, it was error to grant a re-
    straining order and temporary and permanent injunction
    enjoining contestee from discharging the duties of his office
    pending the hearing since the writ of injunction cannot be
    used in an election contest to prevent the holder of the
    certificate of election from qualifying and discharging the
    duties of the office pending the contest.
4.  Elections—Contests—Equity—Jurisdiction.—In the absence of
    statutory authority, courts of equity have no jurisdiction over
    election contests.

vol. 129—13

Harrison v. Stroud.

A. G. DEGARNETTE, M. D. GRAY, E. K. WILSON and W. E. CLAY for appellant.

POINTS DISCUSSED AND AUTHORITIES RELIED ON.

1. To entitle one to an office he must show his title thereto. (Howes v. Perry, 92 Ky., 260.)

2. Motion to dissolve restraining order granted by clerk of court is tried as an application de novo far an injunction. (Code, 290; Caldwell's Pleading and Practice, 707b.)

3. Restraining order should be dissolved when no title to the office is shown. (Howes v. Perry, 92 Ky., 260; Toney v. Harris, 85 Ky., 453.)

4. Limitations as to taking depositions in election contests is mandatory and applies with equal force as does the rule with regard to additional pleadings. (Ky. Statutes, sec. 1596a, subsection 12.)

5. An illegal voter may be compelled to testify as to how he voted. (Combs v. Combs, 30 Ky. Law Rep., 161; Tunks v. Vincent, 106 Ky., 829.)

6. Court of appeals will not consider evidence unsupported by averments of pleadings. (Edwards v. Logan, 24 Ky. Law Rep., 678.)

7. Burden to show how illegal vote was cast is on the one claiming the vote to be illegal. (Childress v. Pinson, 773; Combs v. Combs, 30 Ky. Law Rep., 161.)

8. No additional grounds of contest can be filed after the time fixed by statute. (Anderson v. Likens, 104 Ky., 699; Banks v. Sargent, 104 Ky., 843.)

9. Grounds of contest must be definite. (Lunsfords v. Culton, 15 Ky. Law Rep., 504.)

10. Designating marks must be with fraudulent or corrupt purpose to be rejected, but if made in good faith will not be thrown out. (Herndon v. Farmer, 24 Ky. Law Rep., 1046.)

11. The statute regulating the preservation of uncounted ballots and the certificate of the election officers accompanying same is mandatory. (Neely v. Rice, 29 Ky. Law Rep., 1143; Childress v. Pinson, 30 Ky. Law Rep., 773; Kentucky Statutes.)

12. Court will not invalidate an election where the illegal votes can be ascertained and stricken. (Wavely v. L. S. R., 93 Ky., 223.)

CLORE, DICKERSON & CLAYTON, C. H. BEASLEY & OVERTON S. HOGAN for appellee.

It may be urged that the certificate of elections and the finding of the board of election officers establish a prima facie case for

Harrison v. Stroud.

the appellant, which cannot be overthrown except by strong and convincing evidence. But the court will not be troubled with a solution of that problem. The appellant has solved it for the court and against himself.

When he admitted in his answer that seven of the ninety-seven votes counted for himself were cast openly, on the table, and in the presence of various persons, he admitted that seven of his votes were illegal, and he thereby destroyed the verity of the election return, fatally impeached the certificate, and overthrew his supposed prima facie case. In the face of that admission, the returns of the election can not be accepted for any purpose in favor of the appellant. He can not be allowed to impeach that record upon solemn admission, and then claim under it in the next breath.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR— Reversing.

Appellant and appellee were rival candidates for the office of marshal of Williamstown (a sixth class city), voted for at the November election of 1907, to fill a vacancy in that office. The officers of the election, as well as the county canvassing board, certified that appellant had received 95 votes and appellee 94 votes at that election. Appellant was consequently awarded the certificate of election, and executed the bond and took the oath required by law. Within 10 days after the election appellee instituted this contest in the Grant circuit court. He charged that the election was irregularly conducted in a number of particulars. He charged especially that the polls were not opened on time, but that the voting was delayed because the officers of election present, to gain an undue advantage in the matter, refused to appoint any one of several eligible persons present as sheriff of the election nominated by appellant (the person originally appointed to that place being a partisan of appellant, but refusing for business reason to serve) ; that the election was

held in a room with a glass front fronting, directly upon the street, where a great number of interested and curious persons were congregated, and throughout the day witnessed the voting and used the intelligence so obtained in settling with floaters who it was charged voted openly upon the table in plain view of the spectators and the officers of election; that whisky and money were freely used by appellant and his partisans in influencing the result of the election; that some 50 or 60 persons out of a total of less than 200 voters were allowed to expose their ballots by voting or marking them openly upon the table in plain view of the election officers and others, and without having been examined under oath or otherwise as to their disability to understand or mark their ballots as required by statute; that as many as eight who were named in the petition had so voted for appellant, and as many as 20 more not named also voted for him in the same manner; that the officers of election had wrongfully counted one ballot for contestee which was marked by the voter fraudulently with a distinguishing mark, and had refused to count one ballot for contestant which was voted for him and so marked; that a number of persons not legal voters had voted for contestee. The prayer of the petition was to have the returns purged of the illegal votes charged above, if that were possible, and that contestant be adjudged to have been elected; or, if that could not have been done, that the election be declared void. Another feature of the petition will be noticed in its appropriate place further along. The answer denied the most of the allegations of irregular proceedings in the election, but it expressly admitted that of the eight persons named in the petition as having voted for contestee openly, and not by secret ballot, seven had

Harrison v. Stroud.

so voted, but alleged that the other voters had voted for contestant. The answer then charged that some eight or ten persons, naming them, had been suffered by the election officers to vote openly (i. e., by marking their ballots in public and thereby disclosing their votes) for contestant, and many more not named had voted the same way. Issue was joined by the reply. The proof shows that as many as eight persons voted openly for contestant, and as many as nine so voted for contestee. All these 17 votes were legal voters. Some of them were aged men and of unquestioned probity. Some whose characters are not at all brought in question, and about whose ability to have properly and legally marked their ballots no suggestion is made, were permitted to vote openly, whether in ignorance or by design of the election officers is not sufficiently disclosed. Some so voted, we think, from the motive to purposely disclose how they had voted so that others might act on that knowledge. In addition to the 17 named, there is evidence that probably as many as 40 others, whose names are claimed by the officers and other witnesses to be forgotten, voted similarly. Two men are shown to have been permitted to vote who were not registered, and therefore not legal voters at that election. The circuit court deducted 13 votes from contestee (appellant) and nine from contestant (appellee), leaving the latter winner by a majority of three. There was but little direct evidence of bribery to sustain that charge. There was considerable drunkenness and some treating shown.

Just what conclusion we may have reached on these points is immaterial, because, without pursuing that inquiry to its end, we have become convinced that upon other grounds, coupled alone with the mildest judgment that might be reached on the charges of

bribery and the other irregularities charged, the election ought not to stand.  The other grounds of contest alleged were indifferently sustained by the proof or not at all. This election was one only in form. The Constitution and statutes require all elections save that of school trustee) to be by secret ballot.  Here about 80 per cent. of the voters observed the required course of voting, while the officers of election suffered about 20 per cent., far more than enough to have changed the result either way, to ignore the constitutional and statutory requirements, and to that extent conduct the election in open violation of the law.  While it is the general rule, and a good one, that irregularities, the result of which upon the election can be shown with reasonable certainty to have been not prejudicial, may be disregarded, and the result of legal votes cast in the manner authorized by law be allowed to stand, yet when such irregularities are so widespread or general as to leave the judicial mind in doubt as to how the election did go, or would have gone but for them, then they can not be eliminated.  And such is the statute of this State (subsection 12, section 1596a, Ky. Stats., 1903), which on this subject reads: "In case it shall appear from the whole record that there has been such fraud, intimidation, bribery, or violence in the conduct of the election that neither contestant nor contestee can be adjudged to have been fairly elected, the circuit court subject to revision by appeal, or the court of appeals finally may adjudge that there has been no election."  Our system of government contemplates the filling of elective offices by elections held by authority of law, at which the qualified voters may fairly and by secret ballot express their choice. All should be and are given the same right to vote. Officers of election who purposely ignore the regula-

tions made by the statutes, or who do so through gross ignorance, so that the result is so materially affected as that it can not be determined with reasonable certainty that their irregularities did not control the result, may vitiate an election by such conduct. And, when the officers permit such numbers of voters to violate the secrecy of the ballot as was done in this case, as to materially affect the result of the election, it is not a lawful election, and will be held void on that account. Attorney General v. Stillson, 108 Mich. 419, 66 N. W. 388; Sproule v. Fredericks, 69 Miss. 898, 11 South. 472. Such an election is but a partial election. Instead of ascertaining the popular will, it frustrates its legal expression. It would substitute the result of fraud or gross official ignorance and misconduct for the result of legal votes legally cast. That which is the citizens' shield and weapon of defense in popular government is set aside, and he is undone in the disregard of the law. In the case at bar all who were permitted to vote openly, as it is called, had not a bad purpose. They intended to vote. They had the legal right to vote. They attempted to exercise that right. They were misled by the officers of election so that their suffrage in this instance was destroyed. Had such voters been permitted to vote properly, the result may have been quite different from that found by the judgment of the circuit court; or, for that matter, it may have been in accord with it. But the point is it takes votes to make an election; not some votes, but all that are entitled and offered to be cast, and and which, if cast, comply with the requirements of the law. Judgments of courts and of contest boards are not substitutes for the electors votes. Immaterial derelictions, not influencing the result, may be and ought to be disregarded; but transgressions of the

election law which practically disfranchises enough votes offering to vote, so that the result might have been different but for the illegal acts, would simply substitute an election by some for the election contemplated by law, which is by all. The law deems it better that such elections should not stand. When it becomes known that they will not, the main incentive to those who indulge such practices is removed. When they can no longer profit by them, though otherwise unpunished, they will quit them from motives of interest. This conclusion makes it unnecessary to determine how some three or four disputed votes should have been counted, as in no event could the decision upon this point influence the result.

In the petition in this case contestant charged that contestee was insolvent, and was about to enter into the office in contest by virtue of the certificate issued to him, and that, as the contestant was elected (as he claims), the contestee should be enjoined from discharging the duties of the office pending the hearing. A temporary restraining order was granted by the clerk, which upon motion the circuit court refused to dissolve, thereby converting it into a temporary injunction. And on the final hearing the injunction was perpetuated. It was error to have granted the restraining order, as well as in granting the temporary and permanent injunctions. This writ can not be used in an election contest to prevent the one holding the certificate of election from qualifying and discharging the duties of the office pending the contest. The certificate gives to him to whom it is issued a prima facie right to the office. In the Law of Elections (Paine), 943, it is said: ''The title to a public office can not be tried on an application for an injunction'' —citing Jones v. Commissioners, 77 N. C. 280; Kil-

patrick v. Smith, 77 Va. 349. The same author (section 944) lays it down that "courts of equity will not interfere by injunction to restrain defendants, who have no right to an office, from assuming to exercise the functions on the ground of damage occasioned to the plaintiff, by exclusion therefrom, nor on the ground of fraud in the inspectors in counting the votes and awarding the certificate of election to the defendants." Hart v. Harvey, 19 How. Prac. (N. Y.), 245. So the general rule is stated in 10 Am. & Eng. Encyc. of Law, 761, thus: "As in cases of contest the office ought to be filled by one of the claimants while the action is pending, it frequently becomes a matter of importance to determine what evidence is sufficient to show which one should hold the possession of the office until the question of the right is settled. * * * It is, however, well settled that when it is made the duty of certain officers to canvass the votes, and issue a certificate of election in favor of the successful candidate, a certificate of such officers, regular upon its its face, is sufficient to entitle the person holding it to the possesion of the office during the action to contest the right, and is conclusive as to third parties and in collateral matters." And such seems to us is the reason of the matter and the weight of the authorities. People v. Miller, 16 Mich. 56; State v. Churchill, 15 Minn. 455 (Gil. 369); Kerr v. Trego, 47 Pa. 292. Courts of equity have not the inherent jurisdiction to try contests over elections to office. In the absence of statutory authority, they have no jurisdiction at all in the matter. The statute of this State has simply conferred upon the circuit court the jurisdiction to try certain election contests. But there is no intimation in the statute that they may go further, and, in addition to such trial, disturb the legal status of the claim-

ants as fixed by law pending the decision. As that power has not been given to the courts, it should not be exercised, but the incumbency of the office should be left where the law has placed it until such time as upon a final determination by judgment on the merits the court may say, as it is then permitted to do, that the contestant is entitled to the possession of the office.

For the reasons indicated, the judgment is reversed and cause remanded to the circuit court, with directions to dissolve the restraining order and injunction issued against contestants, and to adjudge that there was no election held on November 6, 1907, to fill the vacancy in the office of marshal of Williamstown.