## Vansant v. McPherson.

(Decided October 1, 1913).

### Appeal from Metcalfe Circuit Court.

1. Elections—Opening and Closing Polls—Slight Violation of Statute Will Not Authorize Disfranchisement of Precinct.—The provision of the statute fixing the time for opening and closing the polls is mandatory; but such a slight violation thereof as only amounts to an irregularity will not authorize the disfranchisement of the whole precinct, especially when it may be ascertained with reasonable accuracy that the votes cast outside the prescribed hours did not change the result.

2. Elections—Legal Voter Casting Illegal Ballot Competent to Testify How He Voted.—A legal voter who casts an illegal ballot is competent to testify how he voted, just as is an illegal voter. The result sought is to purge the returns of illegal ballots.

3. Elections—Ballot Cast Outside Prescribed Hours.—As there is no penalty fixed for casting a ballot outside the prescribed hours, a voter may be required to state how such ballot was marked.

4. Elections—Contest—Evidence.—Evidence examined and after deducting from each candidate the votes cast for them after four o'clock, the result as shown by the returns of the election officers, is not changed.

ALLEN SANDIDGE and PORTER SANDIDGE for appellant.

BASIL RICHARDSON and BAIRD & RICHARDSON for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

Appellant and appellee, together with W. D. Albright, were candidates at the August primary for the Republican nomination for Representative in the Legislative District composed of Metcalfe and Monroe counties.

The complete returns showed that Albright received 553 votes, McPherson 714, and Vansant 722, and the certificate of election was thereupon issued to Vansant.

McPherson and Albright each instituted a contest against appellant, alleging the same ground of contest, viz.: That the polls had been kept open in precinct No. 6, of Monroe County until five-thirty p. m. on election day, and that there had been permitted to vote in that precinct after the regular hour of closing numerous voters, whereby Vansant had wrongfully received in that precinct 65 votes, and had thereby wrongfully been awarded the certificate or nomination.

The vote returned by the election officers in that precinct was for Albright 43, for McPherson 32, and for Vansant 65.

The lower court adjudged that the precinct could not be considered in determining the result, and that McPherson was, therefore, nominated over Vansant by a plurality of 25, and Vansant appeals.

The evidence as to what time the polls closed is very unsatisfactory and uncertain; the recollection of witnesses as to what time has elapsed between two given occurrences is from its nature very uncertain, especially when measured in minutes; but is particularly uncertain in this case from the further fact that it appears throughout the record that some of the parties carried sun-time, some of them standard-time, and some tried to keep between the two.

As sun-time is 22 minutes faster than railroad time it can be readily seen what confusion might arise under such conditions.

One witness for appellee, says, "It was near five" when the polls closed, but that he had no watch; another, that it was "something after five," and that he tried to keep sun-time; another, that the polls closed "About five, I expect," but did not look at his watch, and that his watch was closer to sun-time than to railroad time; another, that they closed a "few minutes after five," and that he kept sun-time or almanac-time; another, that it was "thirty-five or forty minutes after four," and that he tried to keep standard-time, but did not know whether it was correct or not; another, that they closed "right at five," and as to the kind of time said, "Well, we have sun-time there * * * sometimes standard-time."

For the appellant, Everett Adams says, he voted "three or four minutes before four o'clock," and that he examined Jim Barber's time; the stub-book which is before us shows that Everett Adams voted the 179th

ballot cast in that precinct, and that only 189 ballots were cast.

An affidavit for continuance filed by appellant was by agreement read as the depositions of Will Slate and Haskell Fultz, and it is to the effect that they each voted in the primary and voted before four o'clock; and the stub-book shows that they respectively cast ballots 177 and 178, the two immediately preceding that of Everett Adams. The affidavit also stated that appellant could prove by James Barber that he voted seven minutes before four o'clock, and the stub-book shows that he cast ballot 176; but the court refused to permit it to be read as the deposition of Barber, because due diligence had not been shown to procure his attendance at the trial. Lon Ford stated that he was one of the election officers, that he had no watch, and that he did not know exactly what time it was except what those in the election room who did have watches said about it; the stub-book shows that he cast ballot 188.

Appellee proved in rebuttal by two witnesses, that Lon Ford had told them that the polls closed at least twenty minutes after four.

From these contradictory and confusing statements, considering that almost every witness seemed to have had a different time, and that there is twenty-two minutes difference between sun-time and standard-time, and that the votes were being cast rapidly as testified by all witnesses, we have concluded that the most satisfactory evidence as to what time the polls closed is to be gathered from the statements of Adams, Slate and Fultz. The statement of Slate and Fultz, who cast ballots 177 and 178, strongly fortify the statement of Adams, who cast ballot 179, when he says, he voted "three or four minutes before four o'clock;" and that being true only ten ballots could have been cast in the Republican primary after four o'clock; and as the votes were being cast rapidly, we are satisfied that it was not more than twenty or twenty-five minutes after four by standard-time when the polls closed.

Our statute does not specify the kind of time to be used in opening and closing the polls; certainly to close by standard-time would not invalidate the vote of a precinct. So that the question that we have to pass upon is whether or not the holding of the polls open for a short period of time would authorize the disfranchisement of

the voters of that precinct, unless it had been shown that the votes cast outside of the hours provided by law, change the result.

. It has been consistently held that the provision of the statute fixing the time for the opening and closing of the polls is mandatory; but we are not willing to hold that such a violation as amounts only to an irregularity will be permitted to disfranchise the voters of a whole precinct, especially when it may be ascertained with reasonable accuracy that the votes cast outside the prescribed hours, did not change the result. Any other rule would disfranchise the voters of a whole precinct for the mere error of the election officers which might be corrected.

Appellant offered to show in the lower court by a number of these persons who were permitted to vote after four o'clock, how they voted in the Representative race; the lower court at first declined to permit them to do so, but afterwards did consider this evidence.

It is urged for appellee that if the polls are permitted to remain open after the time fixed by law, and enough votes are cast in that time to change the result, the provisions of the statute being mandatory, the precinct must be disregarded, and cites, Banks v. Sargent, 104 Ky.; Graham v. Graham, 24 Ky. L. R.

But Banks v. Sargent does not bear out this contention; there it was held by clear inference that, if the ballots cast after four o'clock could be ascertained and the election purged of them, the whole precinct would not be disfranchised. Considering the question it is said:

"We are of the opinion that the provision of the election law requiring the polls to close at 4 p. m. is mandatory, and not merely directory, and in any case where it is shown votes have been received at any precinct after 4 p. m. sufficient to affect the result, that that precinct should be disregarded, as there is no way to identify the tickets, if not destroyed, nor any power or way to ascertain how these illegal votes were cast, and consequently it is impossible to disregard these votes only, by deducting them from the party for whom they were cast, where it is clearly shown the polls were not closed at 4 o'clock."

Graham v. Graham merely holds that where the polls are not opened at the time required, or are closed earlier than provided by law, a party cannot complain of this unless he shows that he has been prejudiced

thereby; and refers to Banks v. Sargent as authority on that question.

It is insisted for appellee that the testimony of the voters, who voted after four o'clock, is not competent, and that to permit them to testify how they voted would not only violate the secrecy of the ballot, but operate to encourage perjury and false swearing.

It is argued that where such voters are legal voters in the sense that they are entitled to vote in that precinct, that they should not be required, or even permitted to tell how they marked their ballots.

In Tunks v. Vincent, 106 Ky., it was distinctly held that an illegal voter might be compelled to testify how he voted, unless he declined upon the ground that his testimony might incriminate him; and this rule has been consistently adhered to since. But the question here is, does the rule apply only to illegal voters, or does it apply alike to illegal ballots cast by legal voters. It has been held in a number of cases that where illiterate voters had not complied with the requirements of the statute, and their ballots had been stamped openly, that not only were the officers of the election, who were present, competent to testify for whom the ballots were stamped, but that the voters themselves, who had cast the ballots, could be required to state.

In Duff v. Crawford, 124 Ky., 73, it is clearly settled that where illiterate voters vote openly without complying with the statute, not only the election officers, but the voters themselves may be compelled to testify.

From this it would seem to be well settled even in regular elections that the evidence of an illegal voter is competent to prove how he voted, and that the same rule applies with equal force to a legal voter who casts an illegal ballot. The result sought is to purge the returns of illegal ballots whether they have been cast by illegal voters or by legal voters in an illegal manner. There is no question raised as to whether any of them were legal voters; the only question is whether their votes were cast after four o'clock, and the law prescribes no penalty upon a voter for casting his ballot after that hour, even in general elections.

So that they might have been required to testify even if they had claimed the privilege, which none of them did. (Heitzman v. Voiers, this day decided.)

That being true it only remains for us to inquire from the evidence how the ten votes cast after four

o'clock in precinct No. 6 were voted, and to purge the election of these illegal ballots and ascertain the correct result. The last ten ballots cast were those of Tom Murphy, Ed. Shirley, M. F. Clark, Harrison Parsley, A. T. Parsley, Rad Cherry, L. B. Davis, G. N. Crow, Lon Ford and Will Howard.

It is admitted on the record that Will Howard did not vote in the Representative's race. The affidavit for continuance by agreement was read as the deposition of A. T. Parsley, and that states that he did not vote in that race, and of course these two votes are eliminated. Of the other eight Tom Murphy testified he voted for McPherson; and deducting his vote from McPherson's total of 714 it leaves him 713.

Of the remaining seven, Lon Ford, G. M. Crow and Rad Cherry stated that they voted for Albright; and when these three votes are deducted from the total of Albright (553) it leaves 550. Of the remaining four it only appears affirmatively that one of them (Ed. Shirley) voted for Vansant, but if we deduct from his total of 722 all four of them it leaves him 718.

The judgment is reversed; and it is adjudged that appellant is the rightful Republican nominee for the Legislature in the district in question, and the clerk of this court is directed to certify this result to the proper officials.