## Muncy v. Duff.

(Decided March 24, 1922.)

### Appeal from Leslie Circuit Court.

1. Elections—Judge Accompanying Voter to Booth.—The vote of an illiterate or any other person, whom a judge of the election accompanies to the booth and assists in the preparation of the ballot is an illegal vote and should be rejected.

2. Elections—Unintentionally exposing ballot.—If the ballot of an elector is unintentionally and accidentally exposed, it does not render the vote illegal, and should not be rejected.

3. Elections—Preparation of Ballot of Illiterate Person.—Where the votes of illiterate voters are received, who are assisted by the clerk or any officer of the election, in the preparation of the ballots, without first having been sworn, that they are illiterates, or who expose their ballots in the booth to an election officer, who stamps the ballot for them, or shows the voters where to stamp it, the votes of such illiterates should be eliminated from the poll of the candidate for which they were cast and counted, if it can be done.

4. Elections—Illegal Votes.—If illegal votes, secretly cast cannot be eliminated from the number received by the candidate for whom they were cast, and their number can be deducted from the poll of the candidate certified as having a majority, and he yet has a majority of all the votes cast, the illegal voting does not affect the result and the election should be allowed to stand.

5. Elections—Essentials to Validity of Elections.—The chief essential to the validity of an election is to obtain the fair expression of the will of the electorate, and to do this, the requirement of a secret, official ballot is mandatory, but, the statutes directing how this end is to be accomplished are directory, and a failure to comply with these directions will not vitiate the election if the essential end is attained, and the mandatory provision for a secret ballot is observed.

L. D. LEWIS for appellant.

J. M. BICKNELL and J. M. MUNCY for appellee.

Opinion of the Court by Chief Justice Hurt— Affirming.

A unique contest was waged for the office of jailer, in Leslie county, at the November election, 1921, between the appellee, Sylvania Duff, a woman, who was a candidate as an Independent, and the appellant, Allen Muncy, who was the nominee of the Republican party, and resulted in the election upon the face of the election returns of the appellee over her masculine rival. Her majority as certified by the election commissioners was twenty-nine votes. The appellant forthwith instituted a contest of her election, alleging that at several of the polling places in the county, the precinct officers had, through either fraud or by mistake, he did not know which, failed to count many votes for him, which had been cast for him, and had counted many as being cast for the appellee, which she had not received, and asked that the ballot boxes used at those polling places be opened and a correct count of the ballots be made, alleging that it would result in a victory for him, and a showing that the certificate of the election was improperly granted.

The appellant also set out as a ground of contest and averred that Matt Belcher was a Democratic judge of the election in Howard precinct and a supporter of the appellee, that his reputation was that of a dangerous, violent, bad man, which was known to the voters of the precinct; and had boasted, prior to the election, that appellant should not have a single vote in Howard pre-

cinct, that his conduct on the day of the election, and while acting as judge of the election was such as to alarm and intimidate the voters of that precinct, who desired to vote for appellant. That without any cause, he cursed, threatened and intimidated the Republican challenger and did likewise to the Republican workers present, and ordered them to leave the election, for the purpose of intimidating those voters present who desired to vote for appellant; that the voters of the precinct were not permitted by Belcher to vote in secret; that he followed them into the voting booth and there electioneered with them, persuading them to vote for appellee, and when such voters hesitated to vote for appellee, Belcher would curse and abuse them, and in most instances would take the stencil from them and himself stamp the ballot in the circle under the appellee's device, and would thereby, against the will and consent of such voters, cause said votes to be cast, and thereafter counted for appellee, when otherwise the votes would have been cast and counted for appellant. He then sets out the names of seventy-nine voters, at that polling place, a large majority of whom he alleges would have voted for him had they been permitted to do so. He further averred that when seventy-five ballots had been put into the ballot box, about noon on the election day, the officers of the election unlocked and opened the ballot box, took out the ballots, counted and tallied them and placed them in a pile nearby and outside of the ballot box, so that they were within the observation of all persons present; that there were forty-five ballots cast after this time, none of which were put into the ballot box, but each was immediately opened, when returned by the voter, and counted and tallied and placed alongside of the other seventy-five ballots, and exposed to all persons, and that all the ballots in the precinct were opened, exposed and counted and tallied in the presence of a large number of bystanders who had free access to all of the voted ballots. He further averred that the election in that precinct was not free or equal, and the proceedings were so fraudulent and violative of the law that the entire vote of the precinct should be thrown out and disregarded in a tabulation of the ballots cast in the contest for jailer.

The appellee, by answer, traversed all the averments of the petition, and by a counterclaim sought a recount of the ballots in one precinct where the returns showed that she had not received a vote, although she averred

that there were twenty-two votes cast for her at that polling place.

The court held that while there were some irregularities at the election at Howards precinct, they were not sufficient, nor did they affect the result of a fair election and for that reason the election was not void, and should not be disregarded in determining the result of the election in the county; but caused the ballot boxes to be opened and the ballots recounted in each of the precincts, wherein it was sought to be done, and adjudged that the ballots therein, together with those of precincts about which no question was made, showed that appellee in the entire county had received a majority of twenty votes, and was duly elected. From the judgment, the plaintiff below has appealed.

There is no contention upon this appeal that the recount and tabulation of the ballots made by the court were not correct; or that any error was made therein; but it is insisted that the court should have adjudged the result of the election at the polling place at Howards precinct to be void, and to have disregarded it in the tabulation. Excluding the returns from that precinct, the appellant would be elected by a majority of over one hundred votes, and hence the decision must turn upon the validity of the election at that polling place.

Two witnesses deposed that Belcher had the reputation of being a dangerous man, and was an ex-convict, but no one deposed that his neighbors stood in fear or dread of him, and one, when asked as to his reputation, deposed that it was good upon the subject of truth. The charge that he cursed, threatened or intimidated the Republican challenger, or the workers for the Republican candidates or ordered them to leave the election, is not supported in any degree whatever by the evidence. Nor does it appear that there was any person present who was authorized to act as a challenger for the Republican party. After the election had been in progress for two hours, one Colwell, as he testified, offered himself as a challenger, but fails to show by what authority he assumed to act as such, or for what party he was proposing to act. The officers of the election excluded him and it can only be presumed that they acted within their province in excluding an unauthorized person. Presumably during the discussion arising from the offer of Colwell to act as challenger, some person demanded to know of Belcher by what authority he was acting, and he an-

swered that he had his authority in his pocket, and with an oath, that it was none of the demandant's business, and that if such person had any business to attend to at his home, he had best go and attend to it. To whom this remark was addressed does not appear, neither does it appear that anything resulted from the remark, or that any of the assembled voters as much as heard it, as no one deposes concerning it, except Belcher himself, which would probably indicate that he attached more importance to the remark than any other person that might have heard it. Neither is the averment that Belcher threatened beforehand, or at any time, that appellant should not receive a vote at the Howard precinct polling place supported by any evidence. Neither is there any evidence of any character proving that Belcher in any way intimidated or sought to intimidate any voter at the election, or offered any rudeness to any voter, or to any person present.

The charge that the officers of the election opened the ballot box in the middle of the day and took out, counted and tallied the votes, and that the ballots received, thereafter, were opened as they were received, counted and laid by out of the ballot box, and that none of the ballots were returned to the box until the close of the polls, or that the ballots were exposed to the entire crowd, the members of which were allowed free access to them, was not even mentioned in any evidence, and hence we can only assume that they were like the charge of intimidation by Belcher, without any foundation in fact.

The evidence does show that after the closing of the polls, and when the officers were proceeding to count the votes and to certify the result, that one Collins, a witness for appellant, over the protest of the sheriff of the election, forced himself into the immediate presence of the officers and remained until the count was finished. This conduct of Collins, who took no part in the proceedings, but merely looked on, in no way affected the result of the election, and in no way was violative of the secrecy of the ballot, although he subjected himself to a penalty for his conduct.

The ground of contest, as set out in the petition, is that Belcher intimidated the voters, and did not permit them to vote by secret ballot, but compelled them, by his presence and his conduct, to vote according to his wishes, and in connection with this charge it is alleged that he accompanied seventy-nine of them, who are designated

by name, into the booth and there intimidated them into voting as he desired them to do, or else seized the stencil and stamped their ballots as he desired, and such of the voters as he did not accompany into the booth, he observed for whom they voted by peeping over the side of the booth. There were several witnesses who deposed to facts conducing to prove, that Belcher looked at the ballots as the voters stamped them, and that he accompanied a considerable number of the voters into the booth, and there, at least, witnessed the making up of their ballots, while upon the contrary there are a considerable number of witnesses including Belcher and the other officers of the election, who prove that the facts were about as follows: That the officers of the election had an agreement, either express or tacitly understood, that when an illiterate voter went into the booth to vote, if the voter desired help in making up his ballot and was, also, a supporter of a certain candidate for circuit court judge, Belcher should assist him in stamping his ballot, but if the illiterate voter desired to vote for the opposing candidate for circuit court judge, that Napier, the other judge of the election, would assist the voter, and that this arrangement was carried out, and that the voters whom Belcher accompanied into the both and assisted in marking their ballots were only such of the illiterate voters as requested him to do so, and that he assisted and saw the ballots in that way of from seven to a dozen voters. The evidence is very speculative as to the number of illiterate voters in the precinct, some of the witnesses placing the number as high as two-thirds, and others at one-third, and the appellant builds the theory that a great number were assisted by Belcher upon the hypothesis that he assisted all of the illiterate voters in marking their ballots, but the evidence, also, conduces to prove that many of those who were illiterate voted their ballots without assistance, even from the clerk in placing pencil dots to guide the voter in stamping the cross mark at the proper place upon the ballot, to express his choice, and this can be easily believed since the candidates of a party are under an emblem, and the name of appellee was upon the ballot, under her own picture as an emblem, and a voter would be illiterate indeed who could not recognize a ''log cabin'' or the picture of a woman.

It will be observed, that no person voted, who did not possess the qualifications of a legal voter, and no person entitled to vote was prevented or attempted to

be prevented from voting. The evidence is not satisfactory that Belcher peeped over the sides of the booth to see the voting of parties whom he did not accompany into the booth, and he deposes that he did not do so, and in this he is corroborated by the other officers of the election, who were near to him; and during the day, he deposes that he did not see how but one person voted, except those he assisted in voting, and that he had a view of that ballot unintentionally and by accident, and an unintentional exposure of a ballot is not cause for its rejection. Coleman v. Nunnelly, 140 Ky. 138. The witnesses who gave evidence indicative that Belcher was accompanying a great number of voters into the booth were probably led to that belief from the fact that he could be seen by persons outside of the ropes surrounding the officers of the election, going to the ballot box to deposit a ballot at the same time that a voter was returning to the assembled crowd behind the ropes, and the fact was overlooked that the voter's duty was to deliver the ballot to a judge of the election after having stamped his choice upon it and folded it. The fact that appellant named seventy-nine voters whom he alleged that Belcher accompanied into the booth, but took the depositions of only seven of them, strongly indicates that Belcher's, and that of his fellow officers, estimate of the number whom he accompanied into the booths and assisted in voting was substantially correct, especially after he and others had deposed that the number did not exceed one dozen, the correctness of which statement could have been easily disproved by the voters themselves, who were known to appellant by name, if the statement had been erroneous. The electors who testified that Belcher assisted them in voting, deposed that they each voted as she desired, and that Belcher's conduct while assisting them was not subject to complaint, except one woman who thought that he had seized her ballot and deposited it in the box more hurriedly than he should have done after it had been stamped. No attempt was made to prove for whom the voters, assisted by Belcher, cast their ballots, although being illegal votes it was competent to prove by them for whom they voted. Tunks v. Vincent, 106 Ky. 829; Edwards v. Logan, 114 Ky. 312; Stewart v. Rose, 24 R. 1759. That the ballots of the voters, whom Belcher assisted in preparing, were illegal votes, there can be no doubt, and should have been rejected. It has been fre-

quently held that the statute regulating the manner of voting of illiterate persons, who can not read the English language, is mandatory. Section 1475, Ky. Stats, provides that before any assistance can be rendered one in voting he must be sworn to the fact that he is an illiterate, after which, in the presence of the officers of the election and the challenger, the clerk will make a dot with a pencil at the place where the elector should use the stencil to carry out his intentions. The clerk shall then fold and deliver the ballot to the elector, who shall retire to the booth and stamp the ballot, and otherwise be subject to the same regulations in voting as other persons, and a failure to depose as to his illiteracy before receiving assistance, or to receive assistance other than the above, and such as Belcher extended to such illiterates as he accompanied to the booth, renders the vote illegal and should be rejected. The clerk, judge nor challenger can lawfully accompany the voter into the booth and witness the preparation or give assistance in the preparation of which, and if he does so, the ballot should be rejected. Hill v. Motley, 143 Ky. 158; Preston v. Price, 24 K. L. R. 588; Browning v. Lovett, 139 Ky. 480; Pace v. Reed, 138 Ky. 605; Scholl v. Bell, 126 Ky. 624; Major v. Barker, 99 Ky. 305. To permit an election officer to go into the booth, and to witness or assist in the preparation of a ballot, is a ballot shown to another within the meaning of the statute, and must be rejected, however innocently it may be done. In the instant case, the evidence does not prove that the manner in which the illiterates who were assisted by Belcher were permitted to vote, indicated any fraudulent purpose upon their part, or the part of the officers of the election, or that any fraud was intended to be perpetrated by any one, as it seems that they acted in accordance with the custom in that precinct, but this custom will not save the legality of such votes, and Belcher's conduct was unlawful, but it does not appear that he was aware of that fact, or that any of the other officers or voters present were cognizant of the fact, that he might not lawfully do what he did. The proper thing to do in a contested election is to eliminate such votes, if it can be done, by deducting their number from the poll of the candidate for whom they voted. In this instance, however, the evidence does not indicate for whom these illegal votes were cast or counted, and the fate of the election in this precinct must be determined from the fact whether the casting and

counting of these illegal votes affected the result of the election. If the declared result of the election was not affected by them, the appellee should win, but otherwise, the judgment would have to be for the appellant. Section 1596a-12 provides that if there was such fraud, intimidation, bribery or violence in the election that neither contestant nor contestee can be adjudged to have been fairly elected, the election should be held to be void. As heretofore shown there was no intentional fraud, nor was there any intimidation, bribery or violence in the conduct of the election, but it is, also apparent that if the number of illegal votes secretly cast were such that it can not be determined what the result of the election was as between the legal voters, the election would still be void. Harrison v. Stroud, 129 Ky. 193; Butler v. Robertson, 158 Ky. 101; Adkins v. Phipps, 159 Ky. 349; Allen v. Griffith, 160 Ky. 528. While, however, it would be unjust to take all of the illegal votes from the poll received by any one candidate, where it is unknown for whom they voted, still if all these votes be deducted from the number received by a candidate, and he yet has a majority, the illegal voting would not affect the result of the election, and it should be allowed to stand. Young v. Roberts, 143 Ky. 511; Scholl v. Bell, 125 Ky. 750; O'Neal v. Barth, 31 K. L. R. 363; Butler v. Robinson, *supra*. In the instant case, the votes, made illegal by Belcher accompanying the elector into the booth and stamping or showing the voter how to stamp the ballot, if they did not exceed one dozen, which the proof strongly tends to show, if they were all deducted from the votes certified as having been received by the appellee, she yet has a majority of all the votes cast in the county.

The arrangements for holding the election at Howard precinct were improvised and crude, because the sheriff had not performed his duty in furnishing the equipment for the election, as provided by statute, yet appellant does not contend that they were not sufficient to secure the secrecy of the ballot, but that the failure to hold an election by secret ballot arose from intimidation of the voters, on the part of Belcher. The constitutional provision requiring a secret official ballot is mandatory, and nothing short of a substantial compliance is a valid election, but mere irregularities of the officers in the conduct of the election, or in the arrangements for its holding, where they do not comply with the law as to rooms and booths, the failures are irregularities and do not

vitiate the election provided the essential thing of the secrecy of the ballot is preserved. The essential ends to be accomplished by an election are that the ballot shall be secret, and that the election shall be conducted fairly, so that the result of it will be a fair expression of the wish of the electorate, and statutes which give directions to accomplish the ends, and the ends are accomplished, and the merits of the case unaffected, although the directions are not complied with, they are to be considered directory and not mandatory. Felts v. Edwards, 181 Ky. 299; Varney v. Justice, 86 Ky. 596; 15 Cyc. 363; 11 R. C. L. 1108.

An irregularity which developed in the proof, although it was not complained about, or relied upon in the petition as a ground of contest, was that an unauthorized person acted as challenger at the election. This individual was not appointed by the Republican county committee or chairman, but was appointed by the officers of election, who had no authority to do so, although they seemed in good faith to believe that they had such authority. The individual was sworn as required by law, and remained with the officers of the election during the day but it does not appear that his presence in any way prevented a fair election, or in any way influenced its result.

The judgment is therefore affirmed.