## Caudill v. Stidham.

(Decided Nov. 25, 1932.)

C. W. HOSKINS, J. M. MUNCY, and C. K. CALVERT for appellant.

M. C. BEGLEY for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This is a contest action over the office of member of the Leslie County Board of Education elected for education division No. 1 of Leslie county.

This educational division No. 1 of Leslie county is composed of four voting. precincts, Hyden (precinct No. 1), Wooton (precinct No. 7), Poll's Creek (precinct No. 10), and Hendrix (precinct No. 17).

At the regular election held in November, 1931, the appellant, R. E. Caudill, and the appellee, Wm. Stidham, were rival candidates for this office of member of the board of education of Leslie county.

After the election, the county election commissioners canvassed the returns and ascertained thereby that the appellant and appellee had each received 248 votes, and under the authority of section 1596a-11 of Kentucky Statutes determined by lot, the method employed being that of tossing a coin to see which came up, "heads or tails," which of these two candidates was elected, and the lot so determined falling to appellee Stidham, he was awarded and issued the certificate of

election. Whereupon, appellant filed his action contesting appellee's election on many grounds, which appellee defended by counter contest.

Appellant in his petition alleges and assigns five grounds of contest, his main contention being that the Wooton precinct should be eliminated and thrown out upon the grounds that the election officers in that precinct fraudulently and with design, to assist appellee, kept the polls open after the legal hour of closing and permitted enough votes to be cast illegally and fraudulently for appellee to change the result of the election. With the vote of the Wooton precinct out of the count, it appears that the appellant would have a majority of the votes cast in the remaining three districts of the educational division.

By the record it appears that the votes cast in this race for appellant and appellee in the four voting precincts were as follows:

|  | Caudill | Stidham |
| --- | --- | --- |
| Hyden (precinct No. 1) | 65 | 61 |
| Wooton (precinct No. 7) | 78 | 125 |
| Poll's Creek (precinct No. 10) | 34 | 49 |
| Hendrix (precinct No. 17) | 71 | 3 |

The appellee by answer and counterclaim denied the allegations of the plaintiff's grounds of contest as alleged in his petition, and further affirmatively alleged that the appellant received 7 illegal votes in the Hyden precinct, 6 in the Hendrix precinct, and one in the Poll's Creek precinct, making a total of 14 illegal votes received by appellant, which he alleged should be purged from the total of 250 votes received by him, thus reducing the vote received by appellant in the four precincts to 236.

Appellee further alleges that although the polls in the Wooton precinct were kept open and many votes there cast after 4:30 p. m., there was no fraud connected with such extension of the voting time and the same was permitted by the election officers with no intention of thereby aiding appellee, and further that the vote so cast after the legal closing time of said polls did not change the result of the election in that precinct and therefore should not be disturbed.

Appellee further charged that appellant had been guilty of gross violation of the Corrupt Practice Act,

section 1565b-1 et seq. of the Kentucky Statutes, by the use of money directly or indirectly expended by him to corrupt or buy votes in furtherance of his election.

Motions to make more definite the allegations of their pleading were made by each of the parties and demurrers also filed thereto. Further, appellant filed reply to appellee's counterclaim filed within the time required by the Statutes for forming the issues, wherein he particularly denied the affirmative allegations of the answer and counterclaim, though he did not file a further reply to appellee's amended answer and counterclaim, filed, as alleged by appellant, long after the contest pleadings were by section 1596a-12, Kentucky Statutes, required to be pleaded.

Voluminous evidence was taken by the parties in support of their conflicting contentions.

Appellant contended that the vote in the Wooton precinct returned in this contested election should be disregarded and thrown out because of the number of illegal votes cast at said precinct for these candidates, and also that the county election commission, in its canvassing of the returns and ascertaining thereby a tie vote had resulted between these candidates, had no authority to dissolve the tie by casting lots to determine the winner and after so doing to issue him the certificate of election, but that it should have treated the tie received by him and Stidham as creating a vacancy, which it should have certified to the board of education of said county for it to fill.

Upon submission of the cause for trial and judgment, the lower court decided that the election commissioners had no right to dissolve the tie, but should have certified the fact to the board of education, and further decided that all the votes cast and counted for each of the candidates, R. E. Caudill, contestant, and Wm. Stidham, contestee, in each and all of the four voting precincts in the said educational division, were and are legal votes, and further ordered the Leslie county board of election commissioners to assemble immediately upon entry of the court's judgment and declare no person elected as "Chairman of Educational Division No. 1 in Leslie County" at the November election, 1931, and to certify that fact to the Leslie County Board of Education.

Complaining of this judgment in adjudging that all of the votes cast in the said four precincts were legal and properly counted by the election commissioners, this appeal is prosecuted by Caudill and cross-appeal prosecuted by Stidham, complaining that the judgment was erroneous in directing that the election commission should declare no person elected as "Chairman of Educational Division No. 1 in Leslie County" in this election and that such fact be certified by it to the Leslie County Board of Education.

There were three other candidates for the office of member of the Leslie county board of education, who received a few votes in the election, but they do not appear as parties to this appeal, seeking our review here of this contest proceeding.

We have carefully read and re-read the record, but considering the volume of evidence heard, deem it unnecessary to more than here state our conclusions as to it.

We will first consider the matter of the lower court's ruling to the effect that the election commission was without authority to dissolve the tie found to exist by casting lots to determine the winner, but should have certified the fact of such tie vote as resulting in no election of any of the candidates to this office. We are of the opinion that the court erred in so ruling, in that the authority exercised by the election commission in dissolving the tie by lot and issuing its certificate of election to the winner thereby determined elected was an authority properly exercised by the election commission as being expressly provided and conferred upon it by section 1596a-11, Kentucky Statutes.

We will now address ourselves to the main contention and issue between the parties, which is the 270-odd votes cast by the voters of Wooton precinct No. 7 and counted by the election officers, all of which were adjudged by the lower court legal votes and properly so counted as cast for these candidates by the voters of said precinct, regardless of the hour at which their ballots were cast upon the day of this election. The evidence shows without dispute or contradiction that the officers of this Wooton precinct No. 7 permitted the polls to remain open long after the legal hour of closing, with the result that some 75 votes were there cast in this election after the hour of 4 p. m., some 64 votes

of this number being cast by the voters in this race after 4:30 p. m.

It further appears that no effort was made by the election commissioners to ascertain who of these late voters were present at the polls and ready to vote at 4 p. m., but the record discloses that some of these who voted between 4 and 4:30 p. m. came to the polls after the hour of 4 p. m.

The record shows that 289 ballots were cast in the Wooton precinct, 279 of which were legal upon their face and so counted by the election commissioners, and that of this 279 votes, 78 were counted by the commissioners for the appellant Caudill and 125 for the appellee Stidham.

Appellant contends that as 61 of these ballots cast in this race were voted, it is admitted by appellee, after the hour of 4:30 p. m., or 64 of these ballots were voted according to appellant's contention, after this time, inasmuch as such votes were illegal and wrongfully· cast, they invalidated the election at such precinct, and therefore that its vote should be disregarded and thrown out, but if the election in said precinct for such reason should not be adjudged void, appellant contends that a great majority of these illegal votes were cast for the appellee Stidham and that the vote · received and counted for appellee and appellant of 248 votes each should be reduced by the number of this 64 illegal votes as each of them is shown to have received.

Looking to this end, the appellant contends that on summarizing the evidence as to this group of alleged 64 illegal votes, it is shown that the first one of the 279 ballots cast in Wooton precinct after 4:30 p. m., was ballot No. 226 cast by Emily Begley, who was the first one of those voting who testified that it was after 4:30 p. m. when she voted, or, as stated by her, it was "between 4:30 and 5 o'clock" when she voted, and that she voted for her uncle, the appellee Wm. Stidham, from which it would result that if she is correct in her statement, the 63 voters following her would necessarily also have voted after the legal closing hour of the polls at 4:30.

Appellee contends that the first of the voters casting his ballot at this precinct after 4:30 was John Bailey, who cast ballot No. 229, who states in his depo-

sition that he voted at "25 minutes of 5," when 60 of these votes thus shown cast after 4:30 would have followed him.

This witness further testifies that he looked at Jeff Caudill's watch as he came out and that Charley Gayhart, an officer of the election, said that his and Caudill's watches were together.

There is no dispute or contradiction in the testimony of the officers at the polls of this precinct that the polls were opened around 6:45 a. m. and closed between 6:30 and 7 p. m., the officers themselves being the last to vote.

By the proof of the numerous witnesses whose depositions were taken by appellant, it is shown that of these witnesses, 26 of them state that they voted for Stidham, the appellee, 3 for Caudill, the appellant, 12 for Manuel Maggard, while one of them, Jackson Asher, did not vote at all, and 3 in testifying did not state for whom they voted, while 19 voters of this group did not testify at all.

From this summary, it would result that of the alleged 64 illegal votes, appellee Stidham received 26 and appellant Caudill 25, charging to the latter the 3 votes given him, also the 3 votes cast by the witnesses who refused to state for whom they voted and the votes of the 19 whose testimony appellant did not take at all.

Appellee, on the other hand, contends that John Bailey, voter No. 229, on the voters' list of this precinct, should represent the first of the voters casting their ballots after 4:30 p. m. and that of the 61 ballots thus shown cast after 4:30 Stidham received 24, Maggard 12, Caudill 3, 3 declined to state for whom they voted, and 19 did not testify, from which showing he insists that Stidham received 24 of these illegal votes and that Caudill is chargeable with receiving 25 of them, and therefore the result of the election was not changed by reason of the casting of these 64 votes at this precinct's polls after 4:30, and further contends that the action of the election officers in permitting the polls to remain open so long after the legal closing hour was done purely through mistake, without any attempt at fraud accompanying the act and that the testimony of the election officers found in the record clearly supports his contention as to this.

Appellee further contends that the applicable rule for the determination of this controversy is declared in the case of Combs v. Combs (Ky.) 97 S. W. 1127, 1128, 30 Ky. Law Rep. 161, as follows:

"The burden is upon the person contesting the vote to show, not only that the vote was cast in this way, but for whom it was cast, and when this is not done the court is powerless to make any correction, for it cannot know from which side to make the deduction; and the election will not be declared void, where, as in this case, there was no fraud, and the error occurred on both sides, and it is not practicable to say which side profited the more by it."

However, it is also announced in the case of Muncey v. Duff, 194 Ky. 303, 239 S. W. 49, that the fact that election officers have no unlawful intent in permitting illegal voting, as merely following the general custom of that precinct, does not save the legality of the ballots, and that where it is shown that illegal votes were cast and received at an election, while the proper procedure in a contest is to eliminate such votes if it can be done, by deducting their number from the total votes cast for the candidate for whom they voted, yet, if this cannot be determined and their number is sufficient to render it doubtful who was the successful candidate at the election, the election should be held to be void under section 1596a-12, Kentucky Statutes, yet further holding that an election in a precinct should not be declared void because illegal votes were therein received, even though it could not be determined for which candidate the votes were cast, where it would not change the result to deduct the entire number of such illegal votes from the total of the successful candidate.

In the instant case the total vote of both the appellant and appellee showed an equal vote of 248 cast for each, with the result that the charging of these illegal votes as cast for the one candidate and not the other would result in changing the election, and while we are very averse to the disfranchisement of the legal voters of a precinct because of illegal votes cast in such precinct, where such result can be avoided through determining upon substantial and satisfactory evidence for whom the legal votes were cast, we are yet further of the opinion, as said in the Muncey Case, supra, that where the number of such illegal votes are such as to

render doubtful who was the successful candidate at the election, such precinct vote should be disregarded.

To such effect was the rule later announced by this court in the case of Harrison v. Stroud, 129 Ky. 193, 110 S. W. 828, 830, 33 Ky. Law Rep. 653, 16 Ann. Cas. 1050, as follows:

"Here about 80 per cent. of the voters observed the required course of voting, while the officers of election suffered about 20 per cent., far more than enough to have changed the result either way, to ignore the constitutional and statutory requirements, and to that extent conduct the election in open violation of the law. While it is the general rule, and a good one, that irregularities, the result of which upon the election can be shown with reasonable certainty to have been not prejudicial, may be disregarded, and the result of legal votes cast in the manner authorized by law be allowed to stand, yet when such irregularities are so widespread or general as to leave the judicial mind in doubt as to how the election did go, or would have gone but for them, then they cannot be eliminated. And such is the statute of this state (subsection 12, sec. 1596a, Ky. Stats. 1903), which on this subject reads: 'In case it shall appear from the whole record that there has been such fraud, intimidation, bribery, or violence in the conduct of the election that neither contestant nor contestee can be adjudged to have been fairly elected, the circuit court subject to revision by appeal, or the Court of Appeals finally may adjudge that there has been no election.' Our system of government contemplates the filling of elective offices by elections held by authority of law, at which the qualified electors may fairly and by secret ballot express their choice. All should be and are given the same right to vote. Officers of election who purposely ignore the regulations made by the statutes, or who do so through gross ignorance, so that the result is so materially affected as that it cannot be determined with reasonable certainty that their irregularities did not control the result, may vitiate an election by such conduct. And, when the officers permit such numbers of voters to violate the secrecy of the ballot as was done in this case, as to materially affect the result of the election, it is not a lawful election, and

will be held void on that account. Atty. Gen. v. Stillson, 108 Mich. 419, 66 N. W. 388; Sproule v. Fredericks, 69 Miss. 898, 11 So. 472. Such an election is but a partial election. Instead of ascertaining the popular will, it frustrates its legal expression. It would substitute the result of fraud or gross official ignorance and misconduct for the result of legal votes legally cast. That which is the citizens' shield and weapon of defense in popular government is set aside, and he is undone in the disregard of the law. * * * But the point is it takes votes to make an election; not some votes, but all that are entitled and offered to be cast, and which, if cast, comply with the requirements of the law. Judgments of courts and of contest boards are not substitutes for the electors' votes. Immaterial derelictions, not influencing the result, may be and ought to be disregarded; but transgressions of the election law which practically disfranchise enough voters offering to vote, so that the result might have been different but for the illegal acts, would simply substitute an election by some for the election contemplated by law, which is by all. The law deems it better that such elections should not stand.''

And again was this same rule announced by this court in the later case of Smith v. Jones, 221 Ky. 546, 299 S. W. 170, 171, as follows:

"The proof shows that at least 35 of the 146 votes were cast openly on the table, without being sworn. This is more than 20 per cent. of the total vote in the precinct, and it has often been held that, where as much as 20 per cent. of the total vote has been illegally cast, and it is impossible to determine the result of the legal vote between the contending candidates, the precinct should be thrown out. Harrison v. Stroud, 129 Ky. 193, 110 S. W. 828, 33 Ky. Law Rep. 653, 16 Ann. Cas. 1050; Manning v. Lewis, 200 Ky. 732, 255 S. W. 513; Marilla v. Ratterman, 209 Ky. 409, 273 S. W. 69.''

See, also, Young v. Hays, 197 Ky. 185, 246 S. W. 454, and Alsip v. Perkins, 236 Ky. 5, 32 S. W. (2d) 565.

Briefly referring to the contention of appellee that as appellant filed no reply to his amendment making his original answer and counterclaim more definite and

certain and wherein appellee alleged that appellant violated the Corrupt Practice Act, the same stands admitted of record through appellee's failure to deny such allegation by further pleading. We do not feel that this contention is meritorious, in that under the provisions of what is termed the Election Law, supra, it is provided that the answer and counter contest should be filed within 20 days after service of summons on him and that the grounds of contest against a defendant shall be specially pointed out and none other shall thereafter be relied on by said party. This pleading does assign new ground in changing the number of illegal votes charged in the answer cast for appellant, though same is but indifferently, if at all, supported by the evidence.

The appellee assigned in his original answer and counterclaim appellant's alleged violation of the Corrupt Practice Act as a grounds of contest, which allegation was denied by appellee's later reply filed thereto, which was filed before appellee's later filing of amended answer and counter contest, making same more definite as by order of court directed.

We have, in considering similar questions as to delayed filing of pleadings in contest suits, held that where same were merely amendatory of earlier pleadings filed within proper time, they were good as containing no additional ground of counter contest but only perfected a ground which had been alleged in time but defectively. Appellee's counter contest ground that appellant had violated the Corrupt Practice Act was made in his answer and in turn traversed by appellant's reply thereto. If repeated as a new or extended ground of contest in his amended answer, the same, under the quoted section of the statute, supra, could not be filed after the time therein allowed, and therefore no further denial was required of appellant to avoid the effect of an admission.

It has consistently been held by this court that the provision of the statute fixing the time for the opening and closing of the polls is mandatory. Vansant v. McPherson, 155 Ky. 34, 159 S. W. 630, and Land v. Land, 244 Ky. 126, 50 S. W. (2d) 518.

By section 1469 of the Kentucky Statutes, it is provided:

"The polls shall be opened at six o'clock in the forenoon, and kept open continuously up to and closed at four o'clock in the afternoon of the same day * * *."

And this section of the statute was later amended by chapter 49, sec. 4, Acts of the 1930 Session of the Legislature, section 1482, Baldwin's 1930 Supplement to Kentucky Statutes, whereby it is provided:

"When the hour for closing the polls shall arrive, any voter or voters, then and there present or near the polls and desiring to vote, the officers of the election shall permit such voter or voters to vote, and shall for that purpose, extend the time, not exceeding thirty minutes, or until all such voters have voted."

Appellant contends that this 1930 amendatory provision of the statute is unconstitutional, upon the ground that it did not comply with section 51 of the Constitution in its title or in the required re-enactment of the statute it amends.

However, this contention is not to be sustained, as the constitutionality of this amendment, except as to one provision thereof not here involved, has been upheld and sustained by this court in its opinion rendered in the case of State Board of Election Commissioners v. Coleman, 235 Ky. 24, 29 S. W. (2d) 619. From this it follows that all voters not present at the polls of the Wooton precinct at 4 o'clock, and who thereafter voted, in so doing cast illegal votes as well as those who voted after the legal closing hour of 4:30; that being the latest time which the statute permitted the election officers to keep open or extend the time for closing the polls and then only for such portion of said extended time as was required to permit those who were there present at 4 o'clock to cast their vote.

For the reasons hereinabove indicated, we conclude that the votes cast in the Wooton precinct after 4 o'clock by those who were not then present at the polls for the purpose of voting and of others who were permitted to vote after 4:30 p. m., through the election officers unlawfully and in violation of the amendatory statute permitting the polls to remain open until approximately 7 p. m., were illegal votes. Also, the

186

number of such illegal votes constituting more than 20 per cent. of the total vote of the precinct and rendering uncertain, perhaps changing the result of the election, we are of the opinion, under the 20 per cent. illegal vote rule of this court, as announced in the cases, supra, the election so held in said Wooton precinct is void and that its poll should be thrown out and disregarded in the count of the votes cast in this election and in this race for the office of member of the board of education of Leslie county.

Inasmuch as the record discloses that the total vote cast in this race was 647 and the vote of the Wooton precinct thus disregarded was 279, which is far more than 20 per cent. of the total vote cast in this race, it follows by a parity of reasoning that under such circumstances we must hold that there was no election in this race and that there is a vacancy which should be filled as the law prescribes.

Therefore, the judgment of the lower court, in adjudging that all the votes cast for appellant and appellee in this race were legal votes and should be counted, was erroneous, and the judgment must for such reason be, and the same is now, reversed.