## Watts v. Bowen.

(Decided Oct. 17, 1933.)

CLIFFORD E. SMITH for appellant.

OLLIE J. BOWEN and L. W. MORRIS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

At the primary election held August 5, 1933, there were four candidates for the Democratic nomination for representative in Anderson county. On the face of the returns the votes received by each were as follows: Ollie J. Bowen, 1,058; C. E. Watts, 966; William Duncan, 395; and Parker Sims, 384. The appellant, Watts, instituted this contest against the appellee, Bowen. A demurrer to the petition was sustained, and the petition dismissed.

The only ground of contest is the casting of sufficient alleged illegal votes in two precincts to authorize the court to throw those precincts out, which would result in the nomination of Watts. The precincts involved are Stinnett and Sinai. In Stinnett precinct the appellant, C. E. Watts, received 55 votes; the appellee, O. J. Bowen, 90 votes; William Duncan, 26; and Parker Sims, 16 votes; and in Sinai precinct Watts received 27 votes; Bowen, 143; Duncan, 19 votes; and Sims, 8 votes. In Stinnett precinct 107 Democratic votes were cast at the last presidential election, and in Sinai precinct 109 Democratic votes were cast in that election. Section 1596c-6, Kentucky Statutes, provides that in primary elections ''the clerk shall provide and furnish to each election precinct seventy-five per cent. (75%) more official ballots for each political party than the number of votes cast by such political party at the last preceding presidential election.''

It is alleged in the petition that the clerk furnished 187 Democratic ballots for Stinnett precinct and 191 for Sinai, which, in each instance, was 75 per cent. more than the number of votes cast by the Democratic party at the last preceding presidential election. These ballots, with stubs attached, were printed and furnished by the clerk in compliance with section 1461, Kentucky Statutes.

On the day of the primary election, the Democratic ballots in each of these precincts were exhausted before the polls closed, and the clerk caused to be printed a large number of additional ballots and sent them to the election officers in each of the precincts for use in the Democratic primary. In Stinnett precinct 261 Democratic votes were cast and in Sinai precinct 221

were cast. Thus 74 of the additional ballots were used in Stinnett precinct and 30 in Sinai precinct. In the representative's race, however, only 187 votes were cast in Stinnett precinct and 197 in Sinai precinct. These additional ballots were printed on the same kind of paper and in the same manner and form in which the official ballots were printed, but they were not bound in book form. It is further alleged in the petition that these additional ballots were illegal, and that, when they were voted, they were placed in the ballot boxes in each of these two precincts and mingled with the legal ballots, and that it was impossible for the county election commission to separate these unofficial or illegal ballots from the official or legal ballots or to determine who cast the illegal ballots. It is appellant's contention that the entire votes of Stinnett and Sinai precincts should be thrown out. If this is done, appellant will have a plurality of 59 votes over the appellee. Appellant relies upon the case of Wallbrecht v. Ingram, 164 Ky. 463, 175 S. W. 1022, in support of his contention that the additional ballots furnished by the clerk were illegal, but we deem it unnecessary to discuss or determine this question in view of our conclusion that, conceding such to be the established law, the petition does not set out a cause of action. It is conceded that the additional ballots provided by the clerk were printed on the same kind of paper and in the same manner and form as the admittedly legal ballots, and it must be presumed that the stubs showing the names of the voters were detached and returned to the county clerk's office as were the stub books. That being true, the names of the persons who cast the alleged illegal votes could have been ascertained, and it should have been possible to determine for whom they voted and to deduct these votes as illegal from the poll of the candidate for whom they were cast, and thus to separate the legal from the illegal votes. Muncy v. Duff, 194 Ky. 303, 239 S. W. 49; Hodges v. Murray, 240 Ky. 137, 41 S. W. (2d) 923; Land v. Land, 244 Ky. 131, 50 S. W. (2d) 518, 520; Caudill v. Stidham, 246 Ky. 174, 54 S. W. (2d) 654. In Land v. Land it was said:

"It is submitted that it is the established rule that the vote of an entire precinct will be thrown out when as much as 20 per cent. of the total vote was illegal. That rule is not so broad. It is only when

it has been shown that such large proportion of the votes cast were illegal and it is not possible to determine how they were voted, and consequently to charge them up to the recipient, that the entire electorate of the precinct will be disfranchised.''

But, waiving this point, the petition discloses that 74 alleged illegal votes were cast in the Stinnett precinct and 30 in Sinai precinct. The number of illegal votes cast in Sinai precinct was not 20 per cent. of the total cast, and the rule adopted by this court that the entire vote of a precinct will be thrown out where it is shown that more than 20 per cent. of the votes were illegal, and it cannot be determined for whom they were cast does not apply, but it is argued that, where it appears that illegal votes have been cast in an election sufficient in number to change the result, and it is impossible to ascertain the number of illegal votes cast for each candidate, the votes of the entire precinct where any illegal votes were cast should be disregarded. The rule contended for has never been applied except under the provisions of section 1596a-12, Kentucky Statutes, primarily applicable to general elections, which reads:

''In case it shall appear from an inspection of the whole record that there has been such fraud, intimidation, bribery or violence in the conduct of the election that neither contestant nor contestee can be adjudged to have been fairly elected, the circuit court, subject to revision by appeal, or the court of appeals finally may adjudge that there has been no election. In such event the office shall be deemed vacant, with the same legal effect as if the person elected had refused to qualify.''

Taylor v. Nuetzel, 220 Ky. 510, 295 S. W. 873; Ferguson v. Gregory, 216 Ky. 382, 287 S. W. 952; Marilla v. Ratterman, 209 Ky. 409, 273 S. W. 69. Without deciding whether or not this statute can be invoked in primary election contests, in the instant case there is no charge of fraud, violence, intimidation, or bribery. It is merely charged that the county clerk exceeded his authority in furnishing additional ballots in two precincts. It is not charged that the voters who voted these ballots were not legal voters and entitled to vote if they had been furnished legal ballots. The section of the Statutes quoted above, therefore, does not govern.

in determining whether or not the entire votes of the two precincts should be disregarded, and we are relegated to the 20 per cent. rule adopted by this court. In Sinai precinct the number of alleged illegal votes does not amount to 20 per cent. of the total votes cast, and therefore, under the rule, that precinct cannot be thrown out. Caudill v. Stidham, supra; Young v. Hays, 197 Ky. 185, 246 S. W. 454. Even if Stinnett precinct is thrown out, appellee has a plurality over appellant of 62 votes.

The judgment is affirmed.

The whole court sitting.