## Taylor v. Weir.

(Decided October 2, 1913).

## Appeal from Daviess Circuit Court.

1. Elections—Notice of Contest—Requisites of.—A notice contesting an election under the primary law of 1912 must state the grounds of contest and the grounds stated in the original notice cannot be enlarged or added to by an amended or supplementary notice given or filed after the time allowed by the act in which notice may be executed.

2. Elections—Illegal Votes—Must be Sufficient to Change Result.— Where a primary election is contested on the ground that the contestee received illegal votes, unless the evidence shows that the number of the illegal votes received by him was sufficient to change the result of the election, the contestant must fail, although it might appear that illegal votes in excess of the contestee's majority were cast at the election, the evidence not showing for whom they were cast.

3. Elections—Primary Elections Can Not Be Declared Void.—The The act providing for primary elections does not authorize the court to declare the election void, and so in a contested election case the court is limited to declaring that either the contestant or contestee has been elected.

W. E. AUD, W. S. MORRISON, GEO. W. JOLLY and L. P. TANNER for appellant.

MILLER, SANDIDGE & MALIN and CLARENCE M. FINN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant, Taylor, and the appellee, Weir, were contending Democratic candidates for the office of county clerk of Daviess County at the primary election held on August 2, 1913. At this election it appeared from the canvass of the returns made by the election commissioners that Weir received a majority of the votes, and accordingly on August 8th, the certificate of election was issued by the commissioners to Weir.

On August 11th, Taylor had executed on Weir a notice of contest warning Weir to answer on August 15, 1913, in which he stated as his grounds of contest that the officers of election in various named precincts had certified that Taylor received less votes than he did, and that Weir had received more votes than he did. That a large number of illegal votes were cast for Weir at

each voting precinct in the county. That as many as 700 persons were permitted to vote at the election who were not entitled to vote, and that at certain precincts, which were named, the officers of election refused to permit persons, who were entitled to vote, to vote for Taylor. That fraud was practiced by Weir and persons acting for him in the publication and circulation on the day before the election of a false and scandalous circular containing the affidavit of one Mosely, which affidavit and circular influenced a large number of voters to vote against Taylor and for Weir who, except for this, would have voted for Taylor. That bribery was practiced on the part of Weir ''in the payment of money for votes and by the promises made to numerous voters in said county by you and your supporters and agents that J. T. Griffith, Collector of Internal Revenue for the Second District of Kentucky, would use his influence to secure the appointment of said voters to positions of profit in the revenue service of the United States under the said J. T. Griffith and to other governmental positions on the condition that the said voters voted for and supported you in said election for said nomination, and which influenced more than one hundred legal voters to cast their said votes for you and against me for said nomination at said primary election.''

In the response to a rule to make the allegations of his notice more specific, Taylor set out the names of a number of illegal voters who voted in the primary and also said: ''The contestant says in response to so much of said ruling as requires the contestant to state the name or names of persons bribed by contestee by the payment of money or otherwise for their votes in said election that he is at present unable to state the names of any of such persons, but he says on information and belief that a large number of the votes cast for contestee in said election were induced to do so by bribery of the contestee and his agents, and that this is true in each of the 41 voting precincts in Daviess County.''

On August 15, the day specified in the notice, Weir filed his answer, in which, after controverting in detail the notice as well as the response to the rule he set up as grounds of counter-contest that the election officers in one precinct by mistake returned a less number of votes for him than he received. That in another precinct the officers wrongfully refused to count for him the votes of certain named persons. That in other precincts,

naming them, a large number of Republicans and other persons not entitled to vote, naming them, were permitted to and did vote for Taylor.

On August 18, Weir filed a reply, traversing in detail all the averments of the counter-notice of contest set up by Taylor.

On August 28, and after more than ten days had elapsed from the date of the service of the notice upon Weir, Taylor tendered an amended or supplemental notice of contest in which he set out that on July 20, 1913, Weir entered into a written contract with Guy Aull, a citizen and resident of Knottsville precinct, which contract provided in substance that Aull should exert himself to secure as many votes for Weir as he could and that Weir, if elected, should employ Aull as a deputy at $75 per month; and it was averred in this notice that, influenced by the terms of this contract, Aull procured more than 50 persons to vote for Weir, who, except for this contract and Aull's exertion, would have voted for Taylor. But the court refused to permit this additional ground of contest to be filed.

After the evidence relied on by the respective parties had been taken, the case was submitted, and all the ballot boxes were opened in the presence of the court, the litigants and their attorneys, and the ballots recounted. On a recount of the ballots the votes cast for each of the parties was found to be substantially the same as that reported by the election officers, and the court, after considering the evidence, found that Weir had received 2,675 votes and Taylor 2,632 votes, and thereupon adjudged that Weir had received the nomination and directed that his name be placed on the ballot as the candidate of the Democratic party for the office of county clerk.

On this appeal, prosecuted from the judgment, it is not claimed that the evidence disclosed that a sufficient number of illegal votes were cast for Weir to change the result of the election, but it is insisted that because the record shows that 110 Republicans and others who were not entitled to vote in the election, voted, although it does not appear for whom they voted as between Weir and Taylor, except perhaps in a few instances, the election should be declared void or the illegal votes be deducted from Weir's vote. It is further contended that the contract entered into between Weir and Aull was contrary to law and amounted to such bribery and wrongdoing as

to vitiate the election, or if not there should be deducted from the votes cast for Weir more than 50 votes cast for him in the Knottsville precinct which it is claimed he would not have received except for this contract, and that deducting these votes from the vote returned for Weir would give a majority of the votes to Taylor and entitle him to the certificate.

On the face of the returns Weir received a majority of 43 votes, and it was essential to a successful contest by Taylor, upon the ground that illegal votes were cast for Weir, that he should show affirmatively that a sufficient number of illegal votes were cast for Weir to change the result of the election. A mere allegation in the notice of contest that a large number of illegal votes in excess of the majority received by the contestee were cast in the election, although it may be fully supported by evidence showing that a large number of illegal votes in excess of the contestee's majority were cast at the election, in the absence of evidence showing the number of illegal votes cast for the contestee, will not authorize the court to either declare the election void or to adjudge the contestant entitled to the certificate of election. To so rule would be a gross injustice to the contestee and might result in depriving him of an office to which he was justly and legally entitled.

In Pace v. Reed, 138 Ky., 605, it was said upon this point, quoting with approval from the case of Edwards v. Logan, 114 Ky., 312, that "in the Edwards-Logan case, supra, the allegations were that the canvassing board made grave errors in counting the votes, to the plaintiff's loss and disadvantage, and then prayed the court to re-count the ballots cast at the election. This court said these grounds were not sufficient to authorize a recount, and continued as follows. Any other practice would foster and encourage speculative contests, based, not upon known facts or reasons, but made in the hope that something might be discovered. It would be to make this court a canvassing board and to substitute commissioners appointed by the court for the canvassing board created by law. In McCreary on Elections it was said that an application for recount of the ballots cast at an election will not be granted unless some specific mistake or fraud be pointed out in the particular box to be examined. Such recount will not be ordered upon a mere general allegation of errors in the count."

In the contested election case of Combs v. Combs, 30 Ky. L. R., 161, we said: "The burden is upon the person contesting the vote to show not only that the vote was cast in this way, but for whom it was cast, and when this is not done the court is powerless to make any correction, for it cannot know from which side to make the deduction, and the election will not be declared void where, as in this case, there was no fraud and the error occurred on both sides, and it is not practicable to say which side profited more by it."

In Duff v. Crawford, 30 Ky. L. R., 323, the court said:

"The law is well settled that where illegal votes are cast and counted, the candidate who undertakes to purge the ballots of these votes must show for whom they voted."

In Skain v. Milward, 138 Ky., 200, it is said: "It is not shown for whom the illegal votes were cast, and without this it cannot be known that contestants were prejudiced thereby."

In Napier v. Cornett, 24 Ky. L. R., 576, it was also said that "the contestant had the burden, and that burden was only partially sustained by showing that illegal votes were cast. In order to make out his case he must show for whom they were cast."

In Scholl v. Bell, 125 Ky., 750, and Orr v. Kevill, 124 Ky., 720, and perhaps other cases, regular elections were declared void for fraud, bribery, intimidation and other corrupt methods employed by the successful candidates, although the evidence did not show that a sufficient number of illegal votes were cast for the contestee to change the result. But this rule cannot be applied to primary elections, as the court has no power to declare such elections void. Pflanz v. Foster, 155 Ky., 15. When the election cannot be declared void, the settled rule adopted by this court is that the contestant cannot succeed merely by showing that the number of illegal votes cast at the election exceeded the majority obtained by the successful candidate.

It is earnestly pressed on our attention by counsel for Taylor that the contract entered into between Aull and Weir constituted in itself such evidence of fraud and bribery as was sufficient to vitiate the election or at least to deprive Weir of the votes received in the Knottsville precinct.

Section 28 of the primary election act provides in part that "Any candidate wishing to contest the nomi-

nation of any other candidate who was voted for at any primary election held under this act, shall give notice in writing to the person whose nomination he intends to contest, stating the grounds of such contest. * * * And the cause shall be tried upon the grounds of contest contained in the original notice by the contestant and the response of the contestee."

It is thus plainly declared that the contestant is limited to the grounds of contest specified in his original notice and that these grounds cannot be enlarged by subsequent notices or amendments to the original notice not executed within the time required by the act for the service of a notice of contest. In the notice of contest, which was given in due time, no mention is made of this Aull contract as a ground of contest, nor is there anything in the notice that would furnish the contestee information that it was intended to rely on this contract as a ground of contest, and this being so, the court properly refused to permit this new ground of contest to be relied on by the contestant, and it was not competent to offer any evidence relating to it. Having this view of the matter, any observations we might make in reference to this contract or its effect would be outside of the record and obviously out of place in this opinion.

Nor do we find it pertinent to the case to consider what effect, if any, should be given to the Mosely affidavit or the specification in the notice as to the part taken by Griffith as there is no evidence to sustain the charges that voters were improperly influenced by either and indeed these grounds are not seriously pressed on this appeal. The statement, however, is not to be construed into an expression of opinion that if proof had been made, it would be ground for deducting votes from Weir that he received on account of the matter contained in these specifications.

The judgment is affirmed.