## Kash v. Hurst.

(Decided October 8, 1920.)

### Appeal from Lee Circuit Court.

1. Elections—Primary Election—Certificate of Vote.—Where a certificate of the vote recorded in a given precinct in a primary elec-

tion properly states the ballots cast for the contending candidates and the certificate is thereafter changed by persons unknown so as to show that one of the candidates received a greater vote than that tabulated, the vote in the entire precinct will not be disregarded where the correct vote is established beyond all doubt by clear and convincing evidence.

2. Elections—Primary Elections—Fraudulent Vote—How Charged.— If a fraudulent vote is shown to have been cast it should be charged to the candidate for whom it was cast, if this fact can be established, if it cannot be established, it should not be charged to any one.

3. Elections—Primary Elections—Deduction of Illegal Votes.—In one precinct in a Republican primary it was conclusively shown that eight Democrats voted; since contestant received only three votes and there were no questioned or rejected ballots, none marked spoiled or mutilated, and no votes for a third candidate, it necessarily follows that contestant must have received five of the illegal votes, and this number should be deducted from the total number credited to him.

4. Elections—Primary Elections—Count of Votes.—Where there is a question as to the correct vote in a precinct due to the inability to decipher the figures on the certificate, and the pleadings and proof justify it, the trial court should order the box opened and the votes counted to ascertain the truth.

5. Elections—Primary Elections—Contest.—In an original notice of contest as to one precinct it was alleged that a number of persons who could read and write voted openly without being sworn as required by statute; in an amendment thereafter tendered many names were given of those claimed to have thus voted illegally. Held, that the amendment not only came too late but the specification of names was new and additional matter which, under the statute, could not be so presented.

6. Elections—Primary Elections—Amendments.—After the issues had been made up contestant was given four days to introduce his proof; amendments setting up additional names, of those alleged to have voted illegally came too late where they were not tendered until the third and fourth days of the trial and when it was too late to enable opposing party to meet the issue.

7. Elections—Primary Elections—Contest—Pleading.—The necessary limitation of time between the pendency of a contest suit growing out of a primary election and the day of the general election, together with the time necessary for the clerks and other officers to print and distribute the ballots, makes it imperative that the court should strictly follow the statute as to the time to plead.

8. Elections—Primary Elections.—Contest.—In a precinct where it is shown that nineteen Democrats voted in a Republican primary and contestant only received sixteen votes and a third candidate none, contestee cannot be charged with the excess of three votes, since in said precinct there were four mutilated or spoiled ballots, and it is impossible to tell for and by whom these ballots may have been cast.

9. Elections—Primary Elections—Vitiating Ballot.—On a ballot on which the candidate's name was printed a voter wrote the candidate's name in pencil. This vitiated the ballot under Kentucky Statutes, section 1567, providing that no voter shall so mark his ballot, if by so doing it may afterwards be identified as the one voted by him.

10. Elections—Primary Elections—How Vote Should Be Cast.—Where a candidate's name is printed on a ballot the voter should exercise his choice by placing the cross (X) mark beside the printed name and not by writing on the ballot.

A. FLOYD BYRD, R. C. MUSICK, CHESTER A. BACH, A. S. JOHNSON and MORRIS & JONES for appellant.

HAZELRIGG & HAZELRIGG, HOBSON & HOBSON, C. C. TURNER, E. C. O'REAR, GOURLEY & GOURLEY, E. E. HOGG, SAMUEL M. WILSON, A. R. BURNAM, E. B. ROSE, E. C. HYDEN, A. H. PATTON, SOUTH STRONG, W. S. HOGG, M. H. HOLLIDAY, J. F. SUTTON, S. P. STAMPER, C. D. STAMPER and G. W. PENDERGRASS for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

This is a contest for the Republican nomination for circuit judge in the 23rd judicial district, composed of the counties of Breathitt, Estill and Lee. After canvassing the vote for the three candidates for this office the election commissioners issued a certificate of nomination to contestee, the vote as returned being: Sam Hurst 1,579; W. L. Kash 1,566, and J. A. Shackelford 210.

The issues were made up and much proof taken, and upon final submission the court found in favor of contestee. From the above total vote as certified by the election board the lower court made certain changes.

In the Spring Fork precinct of Breathitt county it was conclusively proven that as between the two parties to this appeal a total of 60 votes had been cast when the polls closed. The primary was held on Saturday, August 7, 1920, and by the time the ballot box and its contents, including the stub book and certificate, reached the county clerk's office, late Monday night, it showed a total of 80 votes cast. Of the 60 votes contestee received 57 and contestant 3, but the certificate was so changed as to show 77 votes for contestee. Several witnesses, including the officers of election, were introduced and they testified the vote was 60. It was so apparent the twenty names were added after the certificate had been signed that the lower court very properly deducted this number from contestee's vote. Of the whereabouts of the ballot box

from the time it left the polls until it reached the clerk's office much might be said, also of the condition of the locks and the delayed transit, with the attendant opportunities for designing persons to tamper with its contents. But for the fact that it is possible to ascertain beyond all doubt the correct vote in this precinct, it would be necessary to disregard it entirely.

In this same precinct it is shown, and not seriously disputed, that eight persons affiliating with the Democratic party voted. This being true, these votes were illegal and if possible to find for whom the ballots were cast they should be thrown out.

As said in Childress v. Pinson, 30 Rep. 767, 100 S. W. 278:

"The rule—the fair and just rule—is, that where a fraudulent vote is shown to have been cast it should be charged against the one for whom it is cast, if this can be established, and if it can not be established, then it should not be charged to any one."

Shackelford received no votes in this precinct, there were no questioned or rejected ballots, none marked spoiled or mutilated; it necessarily follows therefore that contestee must have received five of these, since contestant received only three votes, hence the circuit court did not err in deducting five votes from the total credited to contestee. However, the court went further than this and for some inexplicable and unaccountable reason deducted the remaining illegal votes from contestant's total. We are unable to perceive upon what theory or basis this was done. Because it is certain that contestee received five of these eight votes it does not follow as a necessary corollary that the other three were cast for contestant. It is utterly impossible for any one to know for whom the three were cast, and this being true the court improperly deducted this number from contestant's vote.

In the Elkatawa precinct of Breathitt county, the returns showed contestant received 73 votes and contestee 66, a majority of 7 votes in favor of the former. A question arose as to the correctness of this vote, due to the inability to decipher the figures on the certificate, it could not be told whether the vote for contestee was 60 or 66. The court, to save any question and to ascertain the correct vote, ordered the box opened and the ballots counted, with the result that contestant was shown to have received 72 votes and contestee 61. Thus on the recount

it is shown that contestee was given credit for four more votes then he should have had.

In this same precinct it was shown, and not disputed, that Will Oliver, a Democrat, voted for contestee, and this was likewise deducted, making in all a deduction of 30 votes, leaving contestee with a net vote of 1,549.

In addition to the three votes taken from contestant in the Spring Fork precinct the court further reduced his total by 17, which were shown to have been voted for him openly, in disobedience to the statutory requirement as to being sworn, etc. These were divided among the following precincts: Sturgen 1, Quicksand 1, Jackson 1, Turner's Creek 3, Pan Bowl 3, Hunting Creek 3, Crockettville 5. Subtracting these 20 from contestant's returned vote of 1,566 left him with 1,546, or three less than the number credited to contestee.

Correcting the finding of facts to the extent indicated by adding to contestant's total the three erroneously deducted in the Spring Fork precinct, would leave the candidates with an equal number of votes, to-wit: 1,549.

In the answer and counter notice charges of fraud and other irregularities similar to those in the original notice were made. On motion of contestee the ballot boxes in several precincts were opened and it was found that the vote certified in said precincts was correct. In examining the ballots in one of these precincts it was found that a voter had written, with pencil, the name of contestant on the ballot in the space where contestant's name was printed. The lower court counted this ballot for contestant, and the correctness of this ruling is challenged on this appeal. For reasons presently noted we are of the opinion it erred in so doing. Contestant, in seeking a reversal of the judgment, complains principally of error of the circuit court: (a) In its finding of facts as to Spring Fork precinct; (b) in not disregarding entirely the vote in Taulbee, Spring Fork and George's Branch precincts; (c) in failing to deduct from contestee's vote six illegal votes in Taulbee precinct; and (d) in deducting three illegal votes in the Spring Fork precinct.

The notice of contest filed on August 25, called upon contestee to make answer five days thereafter, on which day, to-wit, August 30, the response and grounds of counter contest were filed, likewise a motion to strike from the notice a part of paragraph 6, reading as follows:

"The plaintiff and contestant for further notice and grounds of contest says that in Taulbee precinct No. 14,

Breathitt county, a number of voters, who could read and write and were able to mark their own ballots, voted openly for the defendant, Sam Hurst, on the table,'' etc., etc.

The presiding judge of the circuit court in which the suit was pending being a prospective candidate for the same office on the Democratic ticket declined to sit. This caused some delay in the trial as it was necessary to await the action of the Governor in the appointment of a special judge to try the case. For some reason no action was taken on the motion to strike.

Four days' time was given to each of the parties to present their proof, the ninth day being divided equally between them for rebuttal evidence. The trial was begun September 6, 1920, upon the issues as then made up. Thereafter, to-wit, on September 8, 10, and 11, contestant tendered three separate amendments to the original notice, none of which did the court permit him to file. It is unnecessary to deal with the first of these, but in those tendered September 10 and 11 it was sought to amend that part of the original notice referring to Taulbee precinct, by naming a large number of persons who are alleged to have voted openly on the table and not in obedience to the statutory requirements. It will be remembered that the original notice failed to state either the number or the names of the persons who are alleged to have thus voted openly and illegally.

The trial of contests arising out of primary elections is governed by Kentucky Statutes, section 1550, subsection 28, and in which, among other things, it is provided that no additional ground shall be set up in any reply, and that the cause shall be tried upon the grounds of contest contained in the original notice.

This court has been very liberal in the matter of permitting amendments to be filed in contest cases, considering the necessities of the case and the limitation of time intervening between the pendency of the contest proceedings and the general election. The time absolutely necessary to enable the officials and clerks having the matter in charge to print the ballots and distribute them to the several counties and precincts makes it necessary that the requirements of the statute be strictly complied with.

In Clark v. Robinson, 159 Ky. 25, 166 S. W. 801, which involved the contest of a general election, the petition set out in detail the name sof many persons who were alleged to have voted illegally. The issues were made up and

proof taken.  During the cross-examination of appellant's witnesses the names of 49 other persons who had voted for appellant in an illegal way were discovered, and an amendment was tendered setting up these names. The court refused to permit it to be filed, and this ruling was sustained on appeal on the ground that the amendment could not in any sense be considered as an attempt to more accurately set forth or perfect the original grounds of contest.

And so in Francis v. Sturgill, 163 Ky. 650, 174 S. W. 653, an amended petition was tendered in which for the first time the names of voters alleged to have voted illegally were presented.  This was treated by the court as being a new or additional ground of contest not relied upon in the original petition, and therefore it should not have been filed.

Johnson v. Little, 176 Ky. 505, 196 S. W. 156, Anno. Cases 1918A 70, involved the election of school trustees. It was alleged that a given number of illegal votes were cast.  The answer among other things alleged that eight votes were cast by persons that could neither read nor write, but it was not alleged that these were cast by females.  This fact necessary to disqualify them was afterwards alleged in an amended answer, and it was urged the court erred in permitting this amendment to be filed, but the ruling of the court was sustained on the ground that the matter set up in the amended answer did not contain any additional ground of counter contest, but only perfected a ground which had been alleged in time, but defectively, since in the original answer the persons whose votes were questioned were named, but by inadvertence of the pleader the fact which rendered those votes illegal was omitted, the court saying:

"The amendment did not seek to incorporate therein, or to question, other votes besides those mentioned in the original answer, and therefore contained no additional ground in support of defendant's contention."

In the present case it will be recalled that contestant in his original notice gave neither the number nor names of those alleged to have voted illegally in Taulbee precinct.  For aught that appears the names given in the amendment may be in addition to those referred to in the original petition and this was not permissible.  Furthermore, these amendments were not tendered until the last two days of the introduction of appellant's proof.  Contestee had prepared his case on the issues as made up and had summoned many witnesses to support the de-

fense relied upon. The case was tried in the city of Beattyville, a point some forty odd miles distant from some of the involved precincts; the railroad facilities were limited, and engaged as was contestee and his counsel in the actual trial of the case it would have been impossible for them to have met this new issue, an issue not in the case when they entered upon the trial.

Reasonable indulgence, consistent with the statutory requirements, should be accorded both parties in the preparation and conduct of election contest cases, in order to enable them to present every fact or issue having any bearing upon the contest, the aim of the court being to arrive at the real facts. The rights and obligations of the parties are mutual, and the court must not so far indulge the one litigant as to work a hardship or injustice to the other. In the present instance not only did the amendments contain new and additional grounds but they came too late.

It is said the court erred in not disregarding entirely the vote in three precincts. While irregularities did exist in these precincts, and the grounds of contest and counter contest are sustained in part by both parties, we do not find sufficient proof to warrant us in eliminating these precincts.

In the Taulbee precinct it is alleged that twenty-five Democrats voted. Contestant contends his proof sustains the allegations as to twenty-three of those named; contestee concedes the proof as to sixteen only. Of the twenty-five names designated there was no evidence as to one; as to others, the proof merely showed that the parents of some of them were Democrats. This is not sufficient. Experience in elections teaches us that voters frequently get away from the traditions of their ancestors. The political complexion of the family circle is not uniform, and with the advent of the new voters it will be more varied than ever. People are giving more thought to the matter of suffrage and the number of independent voters is on the increase. It does not follow therefore that simply because one's father may have voted a certain way his son or daughter will follow in his footsteps. Referring to some of those named in the petition, a few witnesses say they are Democrats, others that they are Republicans. Of others mentioned in the petition it is said "this was their first vote." Nothing to the contrary appearing the natural presumption would be that a person casting his first vote in a Republican primary must have cast his lot with that party; it certainly would not

be presumed he was a Democrat. On the whole we have concluded that as to six of those named the proof does not sustain the allegation of the petition. This would leave 19 illegal votes cast.

In this precinct the certificate shows contestant received 16 votes, contestee 52 and Shackelford none. There were no questioned or rejected ballots, but there were four ballots marked "spoiled or multilated." Though contestant received three votes less than the number of persons found to have voted illegally we cannot apply the same rule to the vote in this precinct as was done with the eight Democratic votes in the Spring Fork precinct, owing to the four spoiled or mutilated ballots. It is possible three of these ballots may have been cast by illegal voters; there is no proof to the contrary. Indeed there could be none, as it is impossible to tell how they voted. This being true the returns from this precinct can in no wise affect the result found by the lower court.

We come now to the contested ballot in Beattyville precinct No. 1, Lee county. In section 1569, Kentucky Statutes, it is provided in part as follows:

"No voter shall place any mark upon his ballot, or suffer or permit any other person to do so, by which it may be afterward identified as the one voted by him."

By section 1476, it is made an offense for any officer of election or other person entrusted with the custody or control of any ballot or ballots, after they have been voted, to mark, deface or mutilate it or place any distinguishing mark thereon, either for the purpose of identifying it or for vitiating it.

On this ballot, in the space in which contestant's name is printed, the voter has written, in pencil, the name of contestant, thus clearly making possible a means by which his ballot could be distinguished, the very thing condemned by the section of the statute, *supra*. While the individual voter who cast this ballot may have had no such intention it is a clear violation of the statute, and the ballot cannot be counted. To treat a ballot so marked as valid would be an invitation to designing persons to perpetrate divers frauds, identity of the voter being possible through the handwriting, or perhaps by other schemes that might be devised.

Where a candidate's name is printed on the ballot the voter should exercise his choice by marking the cross X mark after the printed name and not by writing on the ballot. In other states, with statutes similar to ours, a

like conclusion has been reached. People, ex rel Feeny v. Board of Canvassers, 156 N. Y. 36, 50 N. E. 425, 20 C. J. 167.

Sections 1476 and 1569 of the Kentucky Statutes must not be confounded with section 1460 defining the duties of the county clerks in the preparation of the ballots, requiring them to leave a blank space under the name, this being for the purpose of enabling the voter to cast his ballot for someone whose name is not printed on the ballot. Where the candidate's name is printed on the ballot there can be no occasion for a person writing the same name, either in the blank space or in the space wherein the name is printed, because by so doing the voter so marks and distinguishes his ballot as to vitiate it under the section of the statute referred to.

As said in Skain v. Milward, 138 Ky. 200, 127 S. W. 773, in every election there will be some illegal voting. Where the irregularities or fraud are such as to justify it, the court should not hesitate to declare the election void, as was done in Scholl v. Bell, 125 Ky. 750, 102 S. W. 248, or in case of a primary election where the pleadings and proof authorize it to exclude from the total the entire vote in those precincts where the fraud or irregularities are such that it is impossible to tell what was the correct vote. In a primary election contest we cannot declare an election void, but can only decide whether the contestant or contestee is the party nominee. Pflanz v. Foster, 155 Ky. 15, 159 S. W. 641.

A mere allegation in the notice of contest that a large number of illegal votes in excess of contestee's majority were cast in the election, in the absence of evidence showing the number of illegal votes cast for contestee, will not authorize the court to either declare the election void or to adjudge contestant entitled to the certificate of election. Taylor v. Weir, 155 Ky. 72, 159 S. W. 646.

On the whole case we are satisfied that the finding of facts by the lower court, except in the two instances pointed out, is proper and with these corrections it being shown that contestee received a plurality of one vote the lower court properly declared him the Republican nominee for the office aforesaid.

The judgment is affirmed.