## Partin v. Jones.

(Decided Oct. 13, 1933.)

H. H. OWENS for appellant.

J. J. TYE and J. M. GILBERT for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Affirming.

Appellant and appellee were candidates for the Republican nomination for sheriff of Knox county at

the primary election held in August, 1933. Appellee received 496 more votes than appellant, and received the certificate of nomination. Appellant filed contest. Two grounds are relied on: (1) Corrupt Practice Act (Ky. Stats. sec. 1565b-1 et seq.); (2) illegal voting in 19 precincts.

1. Albert Hubbard testified that two weeks before the election Jones gave him $5 and told him to buy some votes for him. Nobody was present. He took the money and gave it to his wife to spend. Jones denied that any of this occurred. Ed Suttles testified that on the day of the election Jones came into his restaurant and went with him into a back room and asked him to work for him in the election. After Jones left he went back•in this room and found $10 on the table. Jones denied that any of this occurred. He impeached both of these witnesses as men of bad character, and there was no contrary evidence. In addition to this he proved a number of facts tending to contradict their testimony. The circuit court properly held that this ground of contest was not sustained.

2. Partin sought to throw out the vote in 19 precincts in the county on the ground that Democrats voted in the primary and that persons were allowed to vote on the table without being sworn. He insists that the precinct should be thrown out where such illegal votes were as much as 20 per cent. of the total vote cast in the precinct; also that if these 19 precincts were thrown out he got a majority of the votes in the remaining precincts, and should have received a certificate of election.

In Caudill v. Stidham, 246 Ky. 186, 54 S. W. (2d) 654, 659, where a precinct was thrown out because more than 20 per cent. of the votes were illegal, the court thus stated the rule:

"Inasmuch as the record discloses that the total vote cast in this race was 647 and the vote of the Wooton precinct thus disregarded was 279, which is far more than 20 per cent. of the total vote cast in this race, it follows by a parity of reasoning that under such circumstances we must hold that there was no election in this race and that there is a vacancy which should be filled as the law prescribes."

The total vote in the 19 precincts in controversy here was more than 20 per cent. of the total vote in the

election. It follows that, conceding arguendo, the application of the 20 per cent. rule to a primary election, even then if appellant's contention is sustained he could not be adjudged the successful candidate, but that a new election would have to be ordered. This is not what he asks in his brief here.

The qualifications of a voter in a primary election are thus fixed in section 1550-19, Kentucky Statutes:

"Before a person shall be qualified to vote in the primary election herein provided for, he shall possess all the qualifications now prescribed by the Constitution and as are now required of voters in regular election. (Except that in the case of women electors the qualifications shall be as prescribed in chapter 47 of the acts of the general assembly of 1912.) He shall, in addition to said qualifications, be a member of the party for whose nominees he intends to cast his vote, and shall have affiliated with said party and supported its nominees and no person shall be deemed to have affiliated with the party in whose primary he seeks to cast his vote, if he voted against the nominee or nominees of such party at the last general election. Said qualifications shall be determined as of the date of the primary, without regard to the qualifications or disqualifications as they may exist at the succeeding regular election."

Under the statute two classes of voters may not legally vote in the primary election; (1) Those who are not members of the party for whose nominees he intends to vote. (2) Those who voted against the nominee or nominees of the party at the last general election. To make out his contest, under the statute the contestant must show that certain persons voted at the election and that they were not members of the party or voted against the nominee or nominees of the party at the last general election. The proof does not come up to this. The contestant proved by some witnesses that Democrats voted in the election without objection from anybody, but they gave practically few names; they kept no record; they did not know any definite number; and their statements were simply their conclusions without any definite basis to rest upon.

On the other hand the proof for the defendant was of the same character, but placed the number of such

votes lower than the proof for the plaintiffs. The same thing is true as to the proof of voting on the table, and if the defendant's proof is true the sum of these illegal votes was much less than 20 per cent. of the vote of the precinct. Appellant relies largely on the fact that the vote in these precincts was much larger than the Republican vote at the last November election. But the proof shows without contradiction that many Republicans refused to vote in the November election and did not go to the polls. The coal industry was in a bad condition; the miners were idle and many of them were temporarily out of the county. The burden was on appellant to make out his case by more positive testimony. In Hodges v. Murray, 240 Ky. 137, 41 S. W. (2d) 923, 928, the court reversing a judgment for the appellee directed the circuit court to award the contestant process to obtain the attendance of the illegal voters, and added this:

> "And the court will require them under oath to state their political affiliation, and to say how they voted between these litigants."

In Land v. Land, 244 Ky. 131, 50 S. W. (2d) 518, 520, the court thus stated the rule as to when a precinct should be thrown out:

> "It is submitted that it is the established rule that the vote of an entire precinct will be thrown out when as much as 20 per cent. of the total vote was illegal. That rule is not so broad. It is only when it has been shown that such large proportion of the votes cast were illegal and it is not possible to determine how they were voted, and consequently to charge them up to the recipient, that the entire electorate of the precinct will be disfranchised."

In this case, under the undisputed proof, a large per cent. of the vote in each of the 19 precincts was cast for Partin. There is little showing that certain illegal votes were cast for Jones, and there is no proof that it is not possible to determine for whom the illegal votes were cast. The plaintiff's case fails here on the proof. The total vote in the similar election in 1929 was practically as large as the total vote in 1933. In addition to this we have a large record containing about 500 pages of typewritten testimony. The circuit court is on the ground and more or less knows local matters,

and in cases where the testimony is conflicting his conclusion on the facts will not be disturbed where on the whole case the mind is left in doubt as to the truth. That is clearly the case here. An election will not be set aside on doubtful proof. The proof must be clear and definite.

Judgment affirmed.