## Johnson v. Caddell et al.
## Caddell v. Johnson et al.
## Sharp v. Same.

(Decided Oct. 25, 1933.)

TYE, SILER, GILLIS & SILER and J. B. JOHNSON for J. B. Johnson.

POPE & UPTON, C. S. WILSON and STEPHENS & STEELY for A. M. Caddell.

B. B. SNYDER for Maurine Sharp.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming in part and reversing in part:

In the August, 1933, primary, A. M. Caddell, J. B. Johnson, and Miss Maurine Sharp were rival candidates for the Republican nomination for county attorney of Whitley county. Caddell, receiving a plurality of the votes on the face of the returns, was awarded the certificate of nomination. J. B. Johnson, who received the second highest number of votes, thereupon instituted this contest proceeding against Caddell, asking that a recount of the ballots be had, that Caddell's vote be purged of certain designated votes alleged to have been cast illegally on one ground or another, to wit, voting on the table, without being sworn, voting after 4 p. m., Democrats voting in Republican primary, bribed votes, etc., and that certain designated precincts be thrown out entirely on the ground that there was such fraud, corruption, intimidation, open voting, and bribery in the election held in those precincts as to make it impossible to ascertain who had received a majority of the legal votes cast therein. Johnson made no charge against Caddell of having violated the Corrupt Practice Act (Ky. St., sec. 1565b-1 et seq.). By his answer and counterclaim, Caddell, after denying the

16

averments of Johnson's petition, in turn alleged by way of counterclaim that certain designated votes had been cast for Johnson which were illegal for the same reasons upon which Johnson had rested his charge of illegal votes cast for Caddell and that these votes should be purged from Johnson's total. Caddell further averred that Johnson and his supporters with his knowledge and consent had violated the Corrupt Practice Act, for which reason Johnson was under no circumstances entitled to any certificate of nomination. Subsequent pleadings by Johnson put in issue the affirmative averments of Caddell's answer and counterclaim. In the meantime, Miss Maurine Sharp, who received the lowest number of votes in the primary, filed an intervening petition in which she attacked the nomination of Caddell and also Johnson's vote, not only on the ground of irregularities and illegalities charged by Johnson and Caddell against each other in their respective pleadings, but also on the ground that both Caddell and Johnson and their respective supporters with their knowledge and consent had violated the Corrupt Practice Act. She asked that because of this last ground both Caddell and Johnson be held not entitled to the nomination and that she be awarded the same. Subsequent pleadings by Caddell and Johnson put in issue the averments of Miss Sharp's pleading. After a vast amount of proof had been taken, the chancellor below entered a judgment in which he stated that he was unable to come to any conclusion as to whether any of the candidates or their supporters with their knowledge or consent had violated the Corrupt Practice Act or not, but that because of the vast number of illegal votes cast in so many of the precincts of the county, he was of the opinion that it was impossible to arrive at the true intent of the voters, for which reason he concluded there had not been a true and correct expression of the Republican voters of Whitley county as to who the proper nominee for county attorney should be. He therefore threw out the primary election in this race and held that none of the respective candidates was entitled to the nomination. Each of the three candidates has prosecuted an appeal from that judgment. The shortness of the time intervening between now and the election and the necessity for a prompt decision to the end that the ballots may be properly printed prevent an

elaborate discussion of the issues involved, for which reason we must give a more or less summary conclusion of our views in this case.

We are met at the outset with the motion of Johnson to dismiss the appeal of Caddell on the ground that the judgment in this case was rendered on October 17th and the supersedeas bond required by section 1550-28 of the Statutes Supp. 1933 was not executed until October 19th, the provisions of the mentioned section requiring such supersedeas bond to be executed "not later than the next day after the 'judgment' is rendered." This section is part of the act of 1930, chapter 50. The primary contest statute in existence prior to the act of 1930 bears the same section number in the 1930 Edition of Carroll's Statutes as does the 1930 act in the 1933 Supplement. The law prevailing prior to the 1930 act required the supersedeas bond to be executed "on the same day" (Ky. St., sec. 1550-28) as the judgment was rendered, and it has been held that such requirement was mandatory and unless the bond was so executed this court had no jurisdiction of the appeal. Milliken v. Hatter, 177 Ky. 31, 197 S. W. 511. It would follow that as the 1930 act postponed the execution of such a bond only by one day, the necessity for executing such bond at least by "the day after the judgment is rendered" is just as mandatory as the analogous provision in the preceding act requiring the bond to be executed on the same day. However, in the case of Ward v. Howard, 177 Ky. 38, 197 S. W. 506, 511, it was pointed out that if the clerk deliberately absented himself from his office or closed his office or concealed himself or refused to take the bond, the contestant would then without fault or neglect on his part be deprived of his right to take an appeal although he may have made every reasonable effort to execute the bond on the day required by the statute. The opinion in that case then stated that this court did not believe that the statute should be so construed as under such circumstances to deprive a defeated litigant in these contest cases of taking an appeal. Laying down the rule that "no litigant should be denied the right to prosecute an appeal on account of his failure to execute a bond within the time allowed when this failure is due to casualty or misfortune or circumstances beyond his control and the delay will not prejudice the substantial rights of the parties,"

18

this court held: "That when it is made to satisfactorily appear that the contestant was prevented from executing the bond on the day the judgment was rendered by unavoidable casualty or misfortune, or accident or surprise which ordinary prudence could not have guarded against, or by circumstances beyond his control, he may execute the bond on the day following and it will have the same effect as if executed on the day the judgment was rendered." The rule of this Ward Case was applied in the matter of issuing a summons in a contest proceeding in the recent case of Prewitt v. Caudill, 250 Ky. 698, —— S. W. (2d) ——, decided October 20, 1933. In the instant case, it appears from affidavits and proof filed that the circuit clerk of Whitley county was legitimately and necessarily absent from his office during the day of October 18th, being in Frankfort on business. It further appears that his deputy had arranged with Caddell to be in the clerk's office after supper on October 18th for the purpose of taking the supersedeas bond; that when Caddell and his sureties, all of whom had signed the bond on October 18th, went to the clerk's office to have the same approved by the deputy clerk, he was not there nor could he be found anywhere on diligent search. The facts of this case bring it squarely within the facts set out in the Ward Case, supra, and under the rule of that case approved in the Prewitt Case, it must be held that the approval by the circuit clerk of Caddell's bond on October 19th must have the same effect as if it had been executed on October 18th. Since the delay of one day has caused no prejudice to Johnson and was due to unavoidable casualty and misfortune and circumstances beyond the control of Caddell, the motion to dismiss his appeal must be overruled.

The appeals in this case present the questions: First, whether Caddell and Johnson or their respective supporters with their knowledge and consent violated the Corrupt Practice Act. Secondly, whether if Caddell or his supporters did not violate it with his knowledge and consent, would a purging of specifically designated illegal votes from his total render it less than Johnson's total, and, if so, did Johnson or his supporters with his knowledge and consent violate the Corrupt Practice Act, and, if not, what effect on his total vote would be the purging of specifically designated illegal

votes from such total? Thirdly, may the court in a primary election hold that none was nominated because of such fraud, intimidation, corruption, and bribery as to render it impossible to ascertain who received the majority of the legal votes, and if not as to the whole primary, may the court do so in the case of any precinct or precincts? Fourthly, if the court may disregard and throw out any precinct or precincts in a primary election, does the proof in this case authorize such action by the court in certain designated precincts and, if so, will the precinct so thrown out reduce Caddell's vote below that of Johnson?

First, without any elaboration of the evidence due to necessities of time and space, it may be said that the proof fails to establish satisfactorily any violation of the Corrupt Practice Act on the part of Caddell or his supporters with his knowledge and consent.

Secondly, it is conceded by Johnson that the purging of the illegal votes, specifically designated in the pleadings from Caddell's total as well as from his own total yet leaves Caddell with a majority of the votes cast. As Caddell received so many more votes than did Miss Sharp, even if all the votes attacked in the various contest petitions be deducted from his total, he would yet be ahead of Miss Sharp.

Thirdly, it is settled in the contest of a primary election that the court is not authorized by the Statutes, as it is in the cases of general elections, to hold that no election has been held because of such bribery, intimidation, fraud, or corruption, as to render it impossible to ascertain who received the most legal votes, or for any other reason except violations of the Corrupt Practice Act where all the candidates may be disqualified because of having violated that act. Pflanz v. Foster, 155 Ky. 15, 159 S. W. 641; Taylor v. Weir, 155 Ky. 72, 159 S. W. 646; Douglas v. Greene, 231 Ky. 44, 20 S. W. (2d) 1026. It thus follows that the lower court erred at least in the reason he assigned for his judgment, since he had, and the courts have, no authority except for violations of the Corrupt Practice Act to throw out entirely a primary election. They must do the best they can in purging the illegal votes and in ascertaining who the victor is.

May the court in a primary election disregard any

particular precinct or precincts because of bribery, fraud, corruption, intimidation, or other reasons rendering it difficult to ascertain the true intent of the voters in such precinct or precincts? Appellant Johnson ably argues that the court may do so under what is known as the 20 per cent. rule, the discussion and application of which may be found in the following cases: Caudill v. Stidham, 246 Ky. 174, 54 S. W. (2d) 654; Land v. Land, 244 Ky. 126, 50 S. W. (2d) 518, 520; Marilla v. Ratterman, 209 Ky. 409, 273 S. W. 69; Muncy v. Duff, 194 Ky. 303, 239 S. W. 49; Smith v. Jones, 221 Ky. 546, 299 S. W. 170. A reference to the Digest will disclose many other cases in which this rule was discussed and applied. Although the rule was expressed very broadly in the earlier cases and especially in that of Harrison v. Stroud, 129 Ky. 193, 110 S. W. 828, 33 Ky. Law Rep. 653, 16 Ann. Cas. 1050, successive opinions of this court have developed the rule until it reached the form in which we now have it in the Land Case, supra. It is: "It is submitted that it is the established rule that the vote of an entire precinct will be thrown out when as much as 20 per cent. of the total vote was illegal. That rule is not so broad. It is only when it has been shown that such large proportion of the votes cast were illegal and it is not possible to determine how they were voted, and consequently to charge them up to the recipient, that the entire electorate of the precinct will be disfranchised."

On the other hand, it is just as ably argued that the disfranchisement of a precinct or the application of the 20 per cent. rule cannot be had in a primary election, in that were it otherwise each precinct of a county could be thus thrown out seriatim and the result would be that the whole election could be thrown out in defiance of the rule laid down in the Pflanz, Taylor, and Douglas Cases, supra. It is true that all of the cases cited by Johnson in support of the 20 per cent. rule except that of Smith v. Jones, supra, arose out of contests in general elections. But the Smith v. Jones Case squarely applied the 20 per cent. rule in a primary election and threw out a precinct in the race for nomination for circuit clerk of Whitley county in the 1927 primary election. In connection with the Smith v. Jones Case, we should also call attention to the cases of Ferguson v. Gregory, 216 Ky. 382, 287 S. W. 952, Manning v.

Lewis, 200 Ky. 732, 255 S. W. 513, and Partin v. Jones, 250 Ky. 632, 63 S. W. (2d) 790, involving primary elections. In these three cases, the evidence was discussed in the light of the 20 per cent. rule, but the conclusion was reached that the facts or the contentions of the parties failed to bring the particular case within such rule. There are cogent reasons supporting the contention of Caddell that the 20 per cent. rule should not apply in primary elections. In such elections, the voter may be compelled to disclose how he voted. Glenn v. Gnau, 251 Ky. 3, —— S. W. (2d) ——, decided October 25, 1933. And hence it is that the vote may in most instances of alleged illegality be satisfactorily purged. If it can be, it is the duty of the contestant to do such purging as the Land Case specifically held. Without intimating whether or not the application of the 20 per cent. rule in a primary election, as was done in Smith v. Jones, be sound or not, and adopting the method pursued in the Ferguson, Manning and Partin Cases, supra, we conclude from an examination of the record in this case that the evidence fails to disclose that after all alleged illegal votes as were purged by the parties and such as could have and should have been purged by the contestant are taken into account, the residue of the alleged illegal votes brings any particular precinct within the so-called 20 per cent. rule. It was the contestant's duty to have purged the vote of those who voted on the table and those who voted after 4 o'clock. The names of the latter were on the stub book, and they could have been brought into court and compelled to state for whom they voted. It is true that the votes of all those who voted after 4 o'clock since the 1932 amendment to the Brock-Gilbert Law were illegal votes. See section 1482 of the 1933 Supplement to the Statutes. That amendment changed the Brock-Gilbert Law as enacted in 1930 (Laws 1930, c. 49) and which permitted voters on hand at 4 o'clock to vote if they voted before 4:30. The 1932 amendment requires the polls to be closed at 4 o'clock as was the law prior to the enactment of the Brock-Gilbert Act. Further, all of the voters who voted on ballots supplied after the regular ballot books containing the number of ballots to which the precinct by statute was entitled were exhausted, could also have been determined from the stubs and purged. The same is true of the bribed voters, and so

on through the catalogue of charges made in these precincts. We are unwilling to disfranchise a precinct under the 20 per cent. rule unless a case is made out for that purpose, and since Johnson's proof fails to show that had he purged these precincts of the votes he could have and should have purged, but did not, the residue of alleged illegal votes which he could not have purged amounted to as much as 20 per cent. of the vote cast in such precincts, he is not entitled to have these precincts disregarded. Since Caddell's plurality is unassailable unless certain precincts be totally disregarded under the 20 per cent. rule, and since as we have seen the evidence fails to justify that action, it results that the lower court erred in holding that Caddell was not entitled to the certificate of nomination which had been awarded him by the election commissioners.

Therefore, the appeal of Miss Maurine Sharp is affirmed, as is also that of J. B. Johnson. In the appeal taken by Caddell, the judgment is reversed, with instructions to dismiss the petition of Johnson and the intervening petition of Miss Sharp and to uphold Caddell's certificate of nomination. The clerk of this court will make the proper certifications as the statute in these election contest cases prescribes.

Whole court sitting.