# Smith v. Kincaid and Four Other Cases.

November 10, 1950.

Rehearing Denied January 24, 1951.

E. B. Beatty, Judge.

Jesse K. Lewis for appellants Smith, Taylor, Bowman, and Brandenburg.

E. B. Rose for appellant Hogan.

E. B. Rose for appellee Kincaid.

Shumate & Shumate for appellees Palmer and Hurst.

Shumate & Shumate, E. B. Rose for appellee Mays.

D. C. Howell, in prosper.

VAN SANT, COMMISSIONER—Reversing.

On November 8, 1949, an election was held for county and magisterial district officers in Lee County. At the close of the polls the ballot boxes were delivered to the county clerk who placed them in the room in the courthouse where they were counted. On the night of the election the first two precincts were tabulated. On the next day thirteen precincts were counted leaving the six remaining of the twenty-one precinct boxes to be opened. At that time nothing had occurred to arouse suspicion that any fraud had been perpetrated and on that evening, November 9, the ballot boxes and room containing them were placed in the custody of five guards. All three of the keys to the ballot boxes (two of which should have been kept by the other election

commissioners) were in the possession of the sheriff who was in the courthouse, and at various times in the room where the boxes were kept, throughout the night. Millard Lackey and Cliff Johnson were the Republican guards, Cleveland Napier and Henry Johnson were the Democratic guards. A fifth guard, Ray Jackson, whose party affiliation does not appear in the record, was appointed for some reason or other. It appears that on the night of the 9th, a good deal of drinking was engaged in by the guards and others around the courthouse, that tension was rather high, and at least two of the guards were armed with open knives which were displayed in a flourishing manner. At any rate, according to his own testimony, Cleveland Napier became fearful that a fight might occur and about 2:00 o'clock in the morning he departed from the courthouse. The whiskey was freely distributed by two persons reputed to be bootleggers and whose liberality in that respect was most unusual. It appeared in evidence that Henry Johnson was drinking considerably and that Cliff Johnson and Millard Lackey were extremely drunk. All of the guards were wandering about the courthouse or outside of it from time to time, and, on at least one occasion it appears no one delegated to guard the boxes was present in the room or on guard outside of it. On another occasion all the guards were locked out of the room, evidencing the presence in the room of persons who had no right to be there. Thus matters stood when the Board of Election Commissioners convened on Tuesday morning, November 10, to count the ballots in the remaining boxes.

While the Commissioners were counting the remaining ballots, at least one member of the board noticed that the ballots in two of the boxes had been tampered with. It developed on examination during the trial that over two hundred of the ballots had been changed on their faces in such manner as to effectuate an increase in the vote for the Republican nominees, particularly in the race for county attorney. The ballots in the four remaining boxes did not show on their faces that any changes had been made, and, if they actually had been tampered with, such tampering was executed in a more subtle and surreptitious manner. Before the commencement of the count on the last day, the majorities in the races with which we are concerned

were as follows: County Judge, Kincaid's over Smith 295 votes; County Attorney, Hogan's over Howell 22 votes; County Court Clerk, Hurst's over Taylor 255 votes; Sheriff, Palmer's over Bowman 355 votes. No precinct in the fourth magisterial district had been counted at that time. There were 755 ballots in the remaining boxes. The Republican nominee in each of the races tabulated was leading his Democratic opponent and the final tabulation by the Board of Election Commissioners showed all of them to be victorious. The Democratic nominees filed these suits contesting the elections in each of the races mentioned. On the trial, the Chancellor found that the ballot boxes in two of the six precincts had been entered by "hoodlums," absolved all of the candidates of any blame in respect to fraud, and declared the Democratic nominee for County Attorney and the Republican nominees for the other offices to be elected.

It is the contention of appellants that such fraud was shown as to render it impossible for the court to determine which of the nominees for the respective offices received the majority of legal votes cast. Appellees negative this contention, and additionally assert that, with the exception of the appeal in the County Attorney's race, appellants are bound by the judgment because all of the sinister influences were eliminated by appellants through their attorney examining all ballots and "agreeing" that certain ballots were legal and contending that others were illegal, and upon the further showing that all of the ballots admittedly changed, if counted for appellees, would not change the results of the election except in the County Attorney's race.

We will dispose of the second contention first. Appellants' attorney did not accept any of the ballots as valid in any of the six precincts last counted. He merely selected 234 ballots in two of the boxes which showed on their faces that they had been tampered with to prove that not only those, but all of the boxes were open to fraud and that a fraud had been perpetrated. It is true that appellants' attorney examined all of the ballots in the six questioned boxes in the presence of the court and did not point to more than 234 which showed fraud on their faces; but we must bear in mind that this is an election contest wherein

it is charged that an inspection of the whole record discloses such fraud in the conduct of the election that neither contestant nor contestee can be judged to have been fairly elected, consequently the court should declare that there has been no election, KRS 122.080(4). Under that allegation the ballots may be introduced as evidence of the fraud alleged and the contestee is not necessarily entitled to be adjudged to have legally received all votes on ballots which do not show on their faces that they have been changed. In Hendrickson v. Coign, 304 Ky. 383, 200 S.W.2d 905, the evidence was conclusive that fraud was perpetrated by ''stuffing'' the ballot box; that the fraud was perpetrated by the election officers themselves by writing the names of fictitious voters on 90 stubs following the stub containing the name of the last actual voter; and that each and every one of the election officers openly worked in the polls for the same candidates in the school board race. Thus it was easy to ascertain and separate the 90 ballots illegally cast for these candidates from the whole and determine who was fairly elected. The case of Johnson v. Caddell, 251 Ky. 14, 64 S.W.2d 441, 443, is not authority in the present case, because it was a contest of a primary election and as stated in the opinion the statutes governing contests in primary elections which were in force at that time did not authorize the court to declare that no election had been held because of fraud rendering it impossible to ascertain who received the majority of the legal votes cast. The court despairingly said ''they (courts) must do the best they can in purging the illegal votes and in ascertaining who the victor is.'' It will be noted that the writer of the opinion declared the winning party merely to be the victor, not to be the person who had received the most legal votes. Frazier v. Wright, 312 Ky. 523, 228 S.W.2d 424 involved a recount merely. It was held that where the ballots were missing from one of the boxes, they, of course, could not be examined as evidence of the result of the election. But the court accepted the original count made by the board of election commissioners as the best evidence of which the case was susceptible. We have no such situation here.

The evidence of fraud in this case is compelling, and is such as to show conclusively that the ballots in all six of the boxes counted on November 10th were so

exposed as to have provided an opportunity for chicanery. It is admitted that two of the boxes were tampered with and the evidence does not contravene the suspicion of substitution or change in the other boxes. In Edwards v. Logan, 114 Ky. 312, 70 S.W. 852, 854, the purpose for which ballots, in varying circumstances, may be considered in evidence was discussed in the following language: " 'If the boxes have been rigorously preserved, the ballots are the best and highest evidence, but, if not, they are not only the weakest, but the most dangerous, evidence.' Judge Cooley, in his work on Constitutional Limitation (625), announces substantially the same rule. Also, see People [ex rel. Dickinson] v. Sackett, 14 Mich. 320; People v. Cicott, 16 Mich. 283, 97 Am.Dec. 141. The authorities are abundant that, *where ballots have been so exposed as to have offered opportunity to be tampered with,* and have not been guarded with that zealous care which will contravene all suspicion of substitution or change, they lose their presumptive purity, and are no longer to be relied on as evidence in a contest or judicial inquiry as to *the result of an election.*" (Our emphasis.)

Applying the rule recited above to the evidence in this case, we can consider the condition of the ballots for the purpose of determining that fraud was perpetrated, but we cannot consider the ballots as evidence to determine the result of the election.

We agree with the Chancellor in his finding that "hoodlums" entered two of the ballot boxes. We conclude further that the "hoodlums" had ample opportunity to enter the four other boxes and to substitute ballots for those originally cast: thus the purity of the ballots was destroyed. The mere failure of the remaining ballots to show on their faces that they had been tampered with does not restore the presumption of purity or erase the taint of fraud.

Appellee Howell separately contends that he should be declared elected to the office of County Attorney because the evidence shows that the fraud was perpetrated primarily in the interest of his opponent and the court determined that he was elected after the elimination of all self evident invalid votes. His theory is that one should not be permitted to benefit by his own wrong. Assuming for the purpose of this argument that How-

ell's opponent Hogan, was a party to the fraud (the Chancellor found that he was not), our decision declaring no election to have been held cannot be construed to be of benefit to him. If we were content to render decisions on speculation, our guess would be that Howell received the majority of the legal votes cast in the race for County Attorney and we likewise would guess that the Republican nominees received the majority of legal votes cast in the other races, but courts were not established for the purpose of attempting to outguess litigants or each other. We find it impossible to determine which of the candidates in any of the involved races received the majority of valid votes cast. It follows that the Chancellor should have declared the election to have been invalid in respect to the offices contested.

The judgments are reversed with directions that others be entered in conformity with this opinion.